Helen C. BYRON, Plaintiff,

v.

RAJNEESH FOUNDATION INTERNATIONAL, a New Jersey corporation, Defendant.

Civ. No. 84–857–PA.

United States District Court, D. Oregon.

Oct. 24, 1985.

Mark L. Cushing, Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., for plaintiff.

Swami Prartho Subhan, Swami Satyam Vishuddha, The Rajneesh Legal Services Corp., Rajneeshpuram, Or., for defendant.

## OPINION

PANNER, Chief Judge.

Defendant Rajneesh Foundation International (RFI) moved for judgment notwith-

standing the verdict or for a new trial. At oral argument, I denied the JNOV motion. I also denied the new trial motion except as to the venue transfer issue, on which I reserved ruling. I now deny the motion for new trial as to the transfer issue, and supplement my earlier rulings regarding punitive damages.

RFI also moved to amend the judgment. I reserved ruling on this, but now grant the motion.

## BACKGROUND

Plaintiff is a former disciple of Bhagwan Shree Rajneesh. She first joined the Rajneeshee religion in Poona, India, where Rajneeshism was then centered. She moved to Oregon when Rajneeshism moved its headquarters there. Plaintiff became unhappy and left the Rajneeshee commune in central Oregon. Eventually, she sought the return of two sums. The first was $309,990 she allegedly loaned to a Rajneeshee organization while in Poona. The second was $80,000 she allegedly placed in a depository or "bank" at the Poona commune. After failing to gain the return of these sums, plaintiff filed this action against RFI.

Plaintiff's first three claims for the $309,990 were for breach of demand loan agreement, misrepresentation, and money had and received. Plaintiff's fourth and fifth claims for the $80,000 were for money had and received and breach of fiduciary relationship.

A jury returned a verdict for plaintiff on each of these claims. It also awarded punitive damages of $1 million on the $309,990 misrepresentation claim, and $250,000 on the $80,000 breach of fiduciary duty claim. Judgment was entered. Defendant then filed these motions.

## STANDARDS

*Motion For Judgment Notwithstanding The Verdict.*

The standards for granting a judgment notwithstanding the verdict are the same

as for a directed verdict. *Kaplan v. Burroughs Corp.,* 611 F.2d 286, 290 (9th Cir. 1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). A directed verdict is appropriate if the evidence permits only one reasonable conclusion. *California Computer Products, Inc. v. I.B.M.,* 613 F.2d 727, 732–33 (9th Cir.1979). To reach such a conclusion, I must consider all the evidence in the light most favorable to the nonmovant. *Shakey's, Inc. v. Covalt,* 704 F.2d 426, 430 (9th Cir.1983). I cannot weigh the evidence presented or the credibility of the witnesses. While the nonmovant's claim must be supported by substantial evidence, all reasonable inferences must be drawn in favor of the nonmovant. *California Computer Products,* 613 F.2d at 290.

*Motion For New Trial.*

Even if the verdict is supported by substantial evidence, I may grant a new trial if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent a miscarriage of justice. *Hanson v. Shell Oil Co.,* 541 F.2d 1352, 1359 (9th Cir.), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1976). A new trial may be granted where the damages award is excessive. *Id.*

## DISCUSSION

*Motion For JNOV—Punitive Damages.*

RFI moves for judgment notwithstanding the verdict arguing that punitive damages are not available under Indian law.[1] Alternatively, RFI moves for a new trial, arguing that one is warranted by excessive punitive damages awards by the jury. RFI also argues that there was insufficient evidence to support an award of punitive damages as to plaintiff's claim for breach of fiduciary relationship, and also appears to argue that the damages awards should be reduced. I deny both motions.

1. At oral argument, RFI also contended that an award of punitive damages violated its first amendment rights. RFI later informed the

court by letter that it wished to withdraw the argument.

The choice of law question that arises in the JNOV motion is difficult, but not dispositive. There is no dispute that Oregon law allows for punitive damages. *See Wolf v. Nordstrom,* 291 Or. 828, 831–32, 637 P.2d 1280 (1981).

The majority rule in India allows exemplary or punitive damages whenever the wrong is of a grievous nature, done with a high hand, or accompanied by a deliberate intention to injure. R. ANAND & L. SASTRI, LAW OF TORT 372, 376 (4th ed. 1980); Defendant's Motion for Summary Judgment Re Punitive Damages, at 13 (Affidavit of Krishan S. Nehra) [Nehra Affidavit]; *see also* R. IYER, LAW OF TORTS 13, 562 (7th ed. 1975). A minority of courts and some commentators are opposed to punitive damages. *See* R. ANAND & L. SASTRI, *supra,* at 376 (approving punitives, but citing two opposing cases); J. SINGHAL, THE LAW OF DAMAGES AND COMPENSATION 607–08 (1970) (disapproving punitives in cases of misrepresentation, no case authority).

■ As to the misrepresentation claim, defendant also argues that Indian law limits punitive damages to a select band of cases, such as gross defamation. Defendant notes that its expert was unable to find a case where Indian courts awarded punitive damages in cases of misrepresentation. The expert's own research, however, shows that punitive damages are available in cases of seduction of a man's daughter with deliberate fraud. *See* Nehra Affidavit. There was evidence here from which the jury could find a deliberate misrepresentation or fraud. There is no reason to limit punitive damages or misrepresentation to cases involving seduction of a man's daughter. Indian tort law is an expanding area accommodating new causes of action and new legal theories. *See Preface* to First Ed. of R. ANAND & L. SASTRI, *supra.*

The other authorities cited by defendant do not directly deal with whether punitive damages should be available in misrepresentation cases, and are inapposite. *E.g., S. Chatterjee v. Dr. K.L. Bhave,* A.I.R.

1960 Madhya Pradesh 323, 329–30 (1960); *United Motor F. Co. v. Romer Dan and Co.,* A.I.R. 1937 Madras 897, 902 (1937); R. RANCHHODDAS & D. THAKORE, THE ENGLISH AND INDIAN LAW OF TORTS 471–72 (19th ed. 1965). There is also evidence here that would satisfy the English requirements for punitive damages. *See Rookes v. Barnard,* 1 A.E.R. 1964, 367, 410–411 (H.L.1964); *Archer v. Brown,* 2 A.E.R. 1984, 267, 277–81 (Q.B.D.1984). Accordingly, I find punitive damages are available in misrepresentation cases like this.

■ As to the breach of fiduciary relationship claim, RFI argues that the Indian Contracts Act of 1872 does not allow for punitive damages. I applied the Contracts Act to this claim. Section 73 of the Act provides for certain forms of damages, but does not include a provision for punitive damages. Indian courts therefore seldom award exemplary or punitive damages for breach of contract. T. IYER, THE LAW OF CONTRACTS 411 (4th ed. 1984).

The Contracts Act does not provide the sole remedy for breach of fiduciary relationship. While the relationship may arise in assumpsit, breach of the relationship can involve not only a breach of contract but also a common law tort in aggravated cases. Indian common law provides for punitive damages in cases of aggravated torts, so punitive damages are available here.

The Indian Trusts Act of 1882 provides an alternate cause of action for breach of fiduciary relationship. Defendant's Trial Brief, at 14. Defendant argued at trial that I should apply section 16 of the Contracts Act, which provides that a contract is unconscionable when obtained through "undue influence," which requires "dominion of the will" by the wrongdoer and mental incapacity by the victim.

The remedy under section 16 is rescission. Plaintiff did not seek rescission, however. There was evidence that plaintiff deposited the $80,000 with the Poona "bank" with the understanding that the

money would be returned upon demand. In filing this claim, plaintiff did not seek to rescind the contract, but to enforce it. This led me to doubt the applicability of section 16. Defendant, however, cited the "guru/disciple" line of cases. Defendant's Trial Brief, at 15–17. These cases hold that relief under section 16 is not allowed unless there is a very close relationship, such as that between a spiritual adviser and devotee. Though this presented a close question, I agreed that the cases under section 16 set the standard for whether a fiduciary relationship existed in the religious context here.

Section 88 of the Trusts Act provides an alternate, more lenient standard than section 16 of the Contracts Act. Section 88 provides that a fiduciary may be liable when he avails himself of his position for pecuniary advantage, or enters into the relationship for that purpose. Evidence at trial and the jury's verdict satisfy this standard.

Post-trial research also shows that section 89 of the Trusts Act provides that a fiduciary relationship arises where one gains advantage over another through "undue influence." 21 D. CHITALEY & S. RAO, THE A.I.R. MANUAL OF UNREPEALED CENTRAL ACTS 426 (3d ed. 1974). The jury found this occurred. Defendant was liable under the Trusts Act.

Defendant has cited no statute, case, or treatise indicating that punitive damages are not available under the Trusts Act. Section 23 of the Trusts Act provides that a trustee who commits a breach of trust must "make good the loss," and pay interest in certain cases. 21 D. CHITALEY & S. RAO, *supra,* at 368. Like section 73 of the Contracts Act, section 23 does not specifically provide for or exclude punitive damages. Because of the aggravated and tortious nature of the conduct alleged at trial, punitive damages should be available for breach of trust.

There is an element of uncertainty in Indian law regarding punitive damages in cases of misrepresentation and breach of fiduciary relationship, and as to whether an "actual conflict" exists between Oregon and Indian law. India has no interest, however, in denying punitive damages in a case like this. *See Erwin v. Thomas,* 264 Or. 454, 457–60, 506 P.2d 494 (1973). Defendant's motion for judgment notwithstanding the verdict is denied.

*Motion For New Trial—Punitive Damages.*

■ I also deny the new trial motion regarding the punitive damages. While Indian law does not provide a formula for assessing punitive damage awards, there must be some reasonable relation between the amount awarded and the wrong suffered. R. ANAND & L. SASTRI, *supra,* at 373. The American test for excessive damages is whether the award was "so high as to shock the 'judicial conscience,' or to compel the conclusion that it was the result of passion or prejudice." *Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.,* 494 F.Supp. 505, 508 (S.D.N.Y.1980), *aff'd in part and vacated in part on other grounds,* 646 F.2d 800 (2nd Cir.1981). The jury applied a rough tripling formula in assessing punitive damages, awarding $1 million in punitives on the $309,990 misrepresentation claim and $250,000 in punitives on the $80,000 fiduciary relationship claim. Triple damages frequently are allowed by the United States Code, and are not shocking.

I also consider the size of the award in relation to RFI's assets. While plaintiff suggests that I consider evidence of assets used by RFI as security on its post-trial motions, I consider only the evidence of assets presented at trial. This evidence was that in 1983, RFI's "non-religious" assets were about $17.75 million, including about $200,000 in cash. Items of religious significance were worth an additional $12 million. Punitive damages here totalled $1.25 million. While the award was substantial, the jury could have found the alleged conduct was egregious.

■ Defendant argues that passion and prejudice are indicated because the jury completed the verdict form and reached a

verdict in only two hours. I disagree. The jury was alert and unusually businesslike during the trial. While it did reach a verdict in about two-and-a-half hours, it also asked a question midway through deliberations regarding an affirmative defense. The verdict form was lengthy, but the questions posed and the underlying issues were relatively simple.

■ RFI also appears to argue that activities inside and outside the courtroom may have influenced the verdict. If counsel for RFI had any complaints regarding this, he should have brought them to my attention. He did not. I noted no particular excitement inside or outside the courtroom. The courtroom was never full. There were a number of spectators wearing Rajneeshee colors and malas,[2] but their conduct inside the courtroom was appropriate. The only inappropriate activity inside the courtroom occurred at defense counsel's table, consisting of frequent whispers, sighs, giggles, and other inappropriate expressions by co-counsel, a paralegal, and Ma Anand Sheela, RFI's president. My warnings to them were made outside the presence of the jury and the press. Sensitive motions were also taken up outside the jury's presence.

■ RFI apparently concedes that there was a sufficient basis for punitive damages as to the fraud claim, and I agree that there was. RFI contends, however, that this is not so as to the $80,000 fiduciary relationship claim. There was evidence from which the jury could conclude that plaintiff made a deposit which was promised to be returned, and that defendant with knowledge, deliberately denied that this sum ever existed. These and other aggravating circumstances justify punitive damages. RFI's motion for new trial is denied.

*Motion For New Trial—Venue Transfer.*

RFI also argues that my failure to grant its motion to transfer venue to the Central District of California warrants a new trial. I disagree.

Title 28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ In addition to the factors mentioned in the statute, a court should consider the factors embodied in the forum non conveniens doctrine, such as

the relevant ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses, possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive ... relative advantages and obstacles to fair trial.

*Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). A court should also consider plaintiff's choice of forum. *Los Angeles Memorial Coliseum Commission v. National Football League,* 89 F.R.D. 497, 499 (C.D.Cal.1981), aff'd, 726 F.2d 1381 (9th Cir.1984). [*Coliseum* ]. Thus the burden of showing that an action should be transferred is on the moving party. *Id.*

■ RFI argues only that I should have transferred the action in the interest of justice, due to prejudicial pretrial publicity. Ninth Circuit practice, however, is that the effect of pretrial publicity can best be determined after the voir dire examination of jurors. *Coliseum,* 89 F.R.D. at 403–510 (collecting cases).

At RFI's request, voir dire was individual and sequestered. The jury pool was doubled. I excused one juror. Defendants did not challenge for cause any of the jurors in the final venire panel. My examination of the prospective jurors convinced me that

---

**2.** A long string of beads worn around the neck, with a medallion depicting Bhagwan Shree Rajneesh.

they had not been prejudiced by pretrial publicity. While all of the prospective jurors indicated some familiarity with events involving Rajneeshees, none of the jurors from the final panel indicated hostility towards or great interest in the defendant or its witnesses. Transfer was unnecessary.

RFI contends that voir dire did not reveal the prospective jurors' true prejudice against Rajneeshees. While only one prospective juror indicated prejudice, a poll presented by RFI found among other things that 40% of Multnomah County residents believed that a Rajneeshee "would lie to protect Rajneeshee interests." Portland is the seat of Multnomah County and prospective jurors were drawn from the Portland area.

I reject the poll. RFI hired an independent polling firm to conduct two polls. The first poll, conducted in September 1984, showed broad distrust of Rajneeshees in the county in which Rajneeshpuram is located, as well as in two neighboring central Oregon counties. The second poll, conducted in October 1984, showed broad distrust of Rajneeshees in three other rural Oregon counties as well as in urban Multnomah County.

I agree with plaintiff's expert that by May 1985, the Multnomah poll was dated. The Multnomah polling took place in late October 1984. The news reports presented by RFI show that shortly before the polling, the Portland media extensively covered the controversial Rajneeshee "Share-a-Home" program. One of RFI's experts believed that this program had a strong impact on attitudes toward Rajneeshees. As plaintiff's expert noted, however, public opinion is dynamic and attitudes held in October 1984 could have changed dramatically by the time of trial.

The chances of this change occurring seem greater given Multnomah County's urban character. As both of RFI's polling experts pointed out, urban residents typically do not hold views, including prejudicial ones, as strongly as rural residents. The Multnomah County polling bore this out, prompting one of RFI's experts to state that Multnomah residents might be more likely to set aside their prejudices. Prior events indicate this was more than possible. Only two months before the October poll, a Multnomah jury returned a defense verdict in a libel case brought by a non-Rajneeshee from central Oregon against several Rajneeshee organizations, including RFI. *Smith v. Rajneesh Foundation International, et al.*, No. A8307–04653 (Multnomah County Circuit Court).

I also agree with plaintiff's expert that the objectivity of both polls is questionable. RFI's experts stated that while they supervised much of the polling, it was performed by volunteers recruited by Rajneesh Legal Services. Plaintiff's expert indicates that the proper polling technique is not to inform interviewers of the identity of the client paying for the poll, or its aims. Revealing this information can lead to conscious and unconscious bias by the interviewers.

This danger is exacerbated here. RFI concedes that the interviewers were residents of Rajneeshpuram and disciples of Bhagwan Shree Rajneesh.[3] Testimony at trial indicated that Rajneeshpuram was somewhat isolated from other Oregon communities, and that Rajneeshees living there were a cohesive group with strong leaders. Because Rajneeshpuram's religious identity is so strong, the interviewers' religion is also significant. Under these circumstanc-

---

**3.** Background facts concerning the poll were difficult to obtain. Counsel for RFI stated at oral argument on the motion for new trial that all interviewers were "volunteers from the community," "people in the community ... of the City of Rajneeshpuram." As counsel was unsure if the interviewers were also Rajneeshees, I asked him to identify any non-Rajneeshees who participated in the polling. His follow-up letter of July 28, 1985 (Exhibit A, attached) states that the "basis for selection of the interviewers was that they not be members of Rajneesh Foundation International or Rajneesh Neo-Sannyas International Commune, nor were they permanent residents of the City of Rajneeshpuram." The letter also states, however, that "all the individuals involved in the survey research ... are Rajneeshees," except for the experts who supervised the polls.

es, their objectivity regarding the sensitive subjects here is suspect.

RFI failed to rebut plaintiff's expert. While I did not give RFI an opportunity to do so at the April 26, 1985 hearing on the venue transfer motion, I subsequently invited RFI to supplement its motion in writing. Though RFI then submitted other material regarding the venue transfer, it failed to rebut plaintiff's expert. Thus the poll has limited value. I also note that many of the questions regarding Rajneeshees were derogatory. What apparently was the first question sets an extremely negative tone, which could also have weakened the poll's objectivity.

RFI also contends that jurors were influenced by news of a recent $39 million verdict by a Portland jury in an action filed by a former Scientologist against the Church of Scientology, *Titchbourne v. Church of Scientology, et al.*, No. 770405184A (Multnomah County Circuit Court). My questioning of many prospective jurors indicated that they were able to distinguish between the two cases, and I am satisfied that they did. The *Titchbourne* case was not mentioned to the jury after voir dire.

The motion for change of venue was filed very close to the trial date, and might have been rejected on this ground alone. *See Coliseum*, 89 F.R.D. at 500. Despite the late filing, many of the exhibits attached to the transfer motion are of questionable relevance. The vast majority of exhibits from the media are examples of pretrial publicity from 1982, 1983, and late 1984. Relatively few exhibits are from the Portland area media, particularly during 1985. Most of the media exhibits are clippings from newspapers in small Oregon towns relatively distant from Portland. Many were from central Oregon communities like The Dalles and Bend, which are closer to Rajneeshpuram and whose residents are likely to have a greater interest in it than Portlanders. Generally the most negative stories came from these communities. Jurors drawn were from the Portland area, and it is doubtful that they received these publications.

Defendants' exhibits indicate that there was little, if any, coverage of RFI itself. Nevertheless, I agree with defendant that there has been substantial coverage of Rajneeshees and Rajneeshee leaders in the Portland media. There was very little pretrial publicity, however, concerning this case. The submissions indicate that there was one news story when the case was filed in 1984, and that one Portland TV station mentioned the case in a broadcast made a few days before trial. I instructed the jury that they should avoid and ignore any news stories concerning the case.

I also question the relevance of exhibits showing that Rajneeshees have received numerous threats. While this evidence is disturbing, the acts of isolated individuals are not representative of a community as a whole. While some of the threats were made from Portland, most were made from central and eastern Oregon. Others originated from several states across the western United States, and even New York.

Transcripts of voir dire conducted in another case involving Rajneeshees is also of questionable relevance. That voir dire took place in eastern Oregon, in *Rajneesh Foundation International, et al. v. Harvey*, Nos. 9374/9375 (Grant County Circuit Court). Two prospective jurors there, a rancher and a rancher's wife from eastern Oregon, admitted that they had biases against Rajneeshees. In March 1985, only a month before the venue motion here, counsel for the City of Rajneeshpuram argued for a change of venue, explaining that Portland is different than eastern Oregon.

MS. SANGEET: Mr. Shepherd [Harvey's counsel] had mentioned Portland wasn't any better. There have been trials in Portland involving Rajneeshees and experience has not been like this. That community is large enough. There is a diversity of opinion, a diversity of people. [Jurors] don't have to go back and live in a town where everybody knows how they voted. There isn't this kind of pressure. We were able to impanel a fair jury in Portland. That is why I feel for my

client it would be possible to do this again in Portland but not in this county.

Transfer was unnecessary. The motion for new trial is denied.

*Motion To Alter Or Amend The Judgment—Prejudgment Interest.*

■ Defendant moves to alter or amend the judgment. RFI requests that I delete either the $1 million in punitive damages awarded on the fraud claim or the prejudgment interest on the breach of demand loan claim. Both claims were for the $309,990. I grant the motion, and delete the prejudgment interest award, which would total about $63,000.

Plaintiff sought prejudgment interest in her complaint. She failed, however, to request it in the pretrial order, which supersedes the pleadings. She also failed to except to jury instructions and the jury verdict form, which did not mention an award of prejudgment interest. The jury awarded $1 million in punitive damages on plaintiff's fraud claim for the $309,990. Under these circumstances, an award of prejudgment interest on the breach of loan claim for the same $309,990 is not justified.

## CONCLUSION

The motions for judgment notwithstanding the verdict and for a new trial are denied. The motion to amend the judgment is granted. The Clerk of the Court shall delete the award of prejudgment interest from the Judgment.

EXHIBIT A

`THE RAJNEESH LEGAL SERVICES CORPORATION

Ma Deva Anando·····
Swami Prem Niren·
Swami Premsukh·
Ma Prem Sheelu·

Swami Prartho Subhan··
Swami Prem Vikas···
Swami Satyam Vishuddha····

July 28, 1985

The Honorable Owen M. Panner
602 U.S. Courthouse
620 S.W. Main Street
Portland, OR 97204

       Re: Byron v. Rajneesh Foundation International,
          84-857 PA

Beloved Judge Panner:

      Regarding the poll surveys conducted under the auspices of Northwest Attitudes, a public opinion research firm, my inquiries reveal that all the volunteer interviewers recruited by The Rajneesh Legal Services Corporation were human beings and American citizens. The basis for the selection of the interviewers was that they not be members of Rajneesh Foundation International or Rajneesh Neo-Sannyas International Commune, nor were they permanent residents of the City of Rajneeshpuram.

      As per the court's instructions at the hearing on defendant's post trial motions held on July 19, 1985, I have inquired into the religious background of all the individuals involved in the survey research. All are Rajneeshees except for Joe Herzberg and Adam Davis whose religious practices are unknown to me. As the record shows, Joe Herzberg and Adam Davis trained all the volunteer interviewers, personally supervised over half of the calls made, and undertook a fifteen percent random verification of the interviews to ensure they were objectively conducted.

      Rajneeshism comprises genuine respect for every individual and his or her freedom, regardless of race, religion, class or caste. The quest for truth and the courage to tell the truth are fundamental to Rajneeshees, who are perfectly capable of undertaking any scientific enterprise objectively.

                    With love,

                    Swami Prartho Subhan