Argued 'October 16, 1958; affirmed March 11, 1959

SEALE ET AL *v.* McKENNON\*, DIRECTOR, OREGON
STATE DEPARTMENT OF AGRICULTURE
336 P. 2d 340

---

\* Substituted for Robert J. Steward, former Director, State Department of Agriculture.

*John F. Kilkenny,* Pendleton, argued the cause for appellants. On the briefs were Kilkenny & Fabre and John H. Kottkamp, Pendleton.

*Cecil H. Quesseth,* Special Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Don Parker, Assistant Attorney General, Salem.

LUSK, J.

This is a declaratory judgment suit challenging

the constitutionality of certain provisions of an act of the legislature relating to the eradication of brucellosis, tuberculosis, and paratuberculosis in Oregon livestock. Oregon Laws 1957, ch 234; ORS ch 597.

The plaintiffs are engaged in the livestock business, principally the raising of beef cattle in Eastern Oregon. They bring the suit not only in their own behalf, but also in behalf of an additional 110 persons in the livestock business in Eastern Oregon. According to the complaint, the plaintiffs and the persons they represent own cattle in said area in excess of 150,000 head. The circuit court held that the challenged provisions of the Act are, with a single exception, constitutional. All the plaintiffs, except three, have appealed.

While the complaint alleges that numerous sections of ORS ch 597 are unconstitutional, and on various grounds not now urged, the controversy in this court has been limited to ORS 597.206 (2), which reads:

"Unless otherwise conflicting with the laws of this state, the department [the Oregon State Department of Agriculture] is authorized and shall adopt and promulgate as regulations the minimum regulations and laws of the United States Department of Agriculture necessary to enable the State of Oregon and the counties to be modified, certified brucellosis-free and tuberculosis-free areas and to maintain that status. The department is further authorized to adopt and to promulgate as regulations any other laws or regulations of the Federal Government, or any other regulations necessary in carrying out the provisions of this chapter regarding movement of livestock, payment of indemnity or the eradication or control measures necessary to prevent the spread of brucellosis, tuberculosis, paratuberculosis or any infectious, contagious, communicable or dangerous livestock diseases."

These provisions are said to be unconstitutional because they delegate legislative powers in violation of Art III, § 1,[1] Art IV, § 1,[2] and Art I, § 21[3] of the Constitution of Oregon.

The circuit court sustained this contention as to the grant of authority to the Department of Agriculture to adopt and promulgate "any other regulations necessary in carrying out the provisions of this act," rejected it as to the remainder of the sub-section, and held the invalid provision severable.

The act of which the provisions here called in question are a part is the most recent of numerous statutes of this state passed for the purpose of controlling communicable diseases of animals. The first of these statutes appeared to have been enacted in 1889. Laws of Oregon, 1889, p 93. Provisions which authorize the slaughtering of cattle infected with Bang's Disease and tuberculosis were sustained as a legitimate exercise of the police power in *State v. Schriber*, 185 Or 615, 205 P2d 149.

We summarize the provisions of ORS ch 597 other than the subsection above quoted: ORS 597.025 declares, among other things, that the purpose of the statute is to "insure federal financial participation in eradicating" brucellosis, tuberculosis and paratuberculosis in Oregon livestock. In furtherance of this policy,

---

[1] Article III, § 1. "The powers of the government shall be divided into three separate departments—the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided."

[2] Article IV, § 1. "The legislative authority of the state shall be vested in a legislative assembly, consisting of a senate and house of representatives, but the people reserve to themselves power to propose laws and amendments to the constitution and to enact or reject the same at the polls, independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. * * *"

[3] Article I, § 21. "* * * nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this constitution; * * *."

the state Department of Agriculture, hereinafter called the Department, is vested with the authority and duty of enforcing the Act. 597.035. When a federal agency is engaged, with the approval of the Department, in carrying out any of the provisions of the Act, its authorized veterinary officers shall have the full power of a deputy state veterinarian, and its agents or employees the same authority as employees of the Department engaged in a similar capacity or type of work. 597.076.

We quote 597.206 (1) in full:

"The department is authorized and shall take all measures necessary and proper in its judgment to eradicate and prevent the spread of brucellosis, tuberculosis and paratuberculosis and to prevent the entry into an area, county or into this state of animals or materials liable to convey these diseases to livestock. The department may require and cause all livestock to be examined, tested and vaccinated in such manner and at such reasonable and seasonable times and in such counties or areas as it may prescribe by regulation."

The slaughtering of infected animals is authorized, and provision is made for the payment of indemnity to the owners. 597.216 to 597.260. ORS 597.270 deals with the duty of persons moving or transporting livestock to furnish at the request of the Department the name of the veterinarian making or performing the required test or vaccinations and the results thereof. Cooperation in making tests or performing vaccinations from owners or persons in charge of livestock is enjoined, and interference with these activities prohibited, 597.280; and quarantine authorized in case of disobedience of these and other provisions, 597.290. Criminal penalties for violations of the Act or regulations of the Department are provided. 597.991.

At the time of the enactment of ORS ch 597, there was, and still is, in effect ORS ch 596, which in several particulars is practically a duplicate of the 1957 act. Chapter 596 does not deal specifically with brucellosis, tuberculosis, and paratuberculosis, but with any communicable disease of animals. Section 596.020 provides in part:

"(1) The department shall:

"(a) Exercise a general sanitary supervision over the livestock of this state, and as far as possible, protect the livestock of this state from disease.

"(b) Take all measures necessary and proper, in its judgment, to eradicate and prevent the spread of infectious, contagious and communicable diseases that may exist among livestock and to prevent the entry into this state of animals or materials liable to convey disease to the livestock of this state."

Section 596.040 reads:

"(1) Whenever the Director of Agriculture deems it necessary, he may enter into cooperative and reciprocal agreements with the United States Department of Agriculture or any other federal agency for the purpose of controlling and eradicating any disease that may exist among the livestock of this state.

"(2) Whenever any federal department or agency, through its authorized veterinary officers, agents or employes is thus engaged, each of them shall have the full power and authority of a deputy state veterinarian, but is not entitled to pay from this state for services he performs."

The destruction or treatment of livestock that may be infected with, exposed to or which may be a carrier of a disease, the destruction of feed and other infected materials, and the summary quarantine of such animals are authorized, 596.392 to 596.396, as well as the

quarantine of areas of the state, 596.402. In exercising powers conferred by ORS 596.388 to 596.412, the Department is directed by 596.412 to give appropriate weight and consideration to the following:

"(1) The previous existence of the disease in this state.

"(2) The action taken by the United States Government in respect to the eradication and control of such disease.

"(3) The economic consequences to the citizens of this state which might result from the spread of the disease.

"(4) The extent to which the disease is endemic or epidemic through neighboring states, the United States and this state.

"(5) The extent to which livestock other than those which are infected or carriers of the disease may be adversely affected by it.

"(6) Any other factors which may reasonably be found to affect the welfare of the livestock industry specifically or the people of the State of Oregon generally if such disease is not eradicated or controlled."

Federal legislation enacted for the purpose of controlling communicable diseases of livestock in interstate commerce goes back to 1884, when Congress created the Bureau of Animal Industry within the Department of Agriculture. Act of May 29, 1884, ch 60, 23 Stat 31. The functions of the Bureau were subsequently transferred to the Agricultural Research Service, Disease Eradication Division, Reorganization Plan No. 2 of 1953, 67 Stat 633, 5 USCA § 1332—15 note. The existing legislation confers broad powers upon the Secretary of Agriculture to adopt rules and regulations for the purpose of preventing the introduction of the contagion of communicable diseases of animals

from a foreign country into the United States or from one state or territory into another, and of securing the cooperation of the states in achieving the Congressional objectives. See 21 USCA, §§ 111, 114, 114-a (1958 pocket pt.). Under the section last cited, the Secretary of Agriculture is authorized to pay claims growing out of the destruction of animals and materials affected by or exposed to any such disease.

Pursuant to the authority conferred by these statutes, the Secretary established regulations which were in effect at the time that ORS 597.206 became law. Among these is Section 78.1 (i) of Title 9, sub-chapter (c), published in the Federal Register for July 12, 1956, at page 5183, which defines a "Modified certified brucellosis-free area" as follows:

> "A State, or a political subdivision or portion thereof, in which the percentage of cattle affected with brucellosis has been determined by the Agricultural Research Service, United State [sic] Department of Agriculture, not to exceed one percent and the percentage of herds in which brucellosis is present has been determined by such Service not to exceed five percent, and which maintains that status in accordance with provisions of the 'Uniform Methods and Rules for the Establishment and Maintenance of Certified Brucellosis-free Herds of Cattle and Modified Certified Areas', which are adopted by the United States Livestock Sanitary Association, and approved by the Branch. Copies of such Uniform Methods and Rules are available at the Washington, D. C., office of the Branch. (Such areas are specified in § 78.13.)"

As amended in a minor particular, the foregoing regulation is published in the Cumulative Pocket Supplement to the Code of Federal Regulations, Title 9, Part 78, p 67.

The Branch referred to in the regulation as originally adopted is the Animal Disease Eradication Branch, Agriculture Research Service, United States Department of Agriculture. See Federal Register, op cit, p 5183. The Branch is now known as the Division.

So far as we are advised, there is no similar regulation relating to the eradication of tuberculosis.

In 1951 the Department, acting under the authority of OCLA 32-204 (the predecessor of ORS 596.040), had entered into a cooperative agreement with the Bureau of Animal Industry of the United States Department of Agriculture for the work of brucellosis eradication, which contained this provision:

"That the current recommendations of the United States Livestock Sanitary Association for brucellosis eradication in livestock which have been approved by the U. S. B. A. I., and in so far as Oregon law permits, shall be the minimum requirements for the control and eradication of brucellosis in livestock in the state of Oregon."

It was evidently the judgment of the legislature that, by the adoption of the 1957 statute, the Department would be enabled to engage more effectively in the cooperative program theretofore undertaken. It is a nation-wide program. Its advantages lie not only in the receipt of financial aid from the federal government, but in bringing about a freer movement of livestock across state lines. Statutes enacted in some of the other states designed to accomplish the same purpose are referred to in the margin.[4]

The main point of attack upon ORS 597.206 (2)

---

[4] Revised Code of Washington, §§ 16.40.010 to 16.40.130; Idaho Code, §§ 25-601 to 25-617; West's Wisconsin Statutes, Anno., § 95.26; General Statutes of North Carolina, §§ 106-388 to 106-399; Revised Statutes of Maine, ch 32, §§ 74 to 80, see, also, 1957 Cumulative Supplement. All these states are entirely modified, certified brucellosis-free areas except Idaho, which is partially so.

is that it is a delegation of authority to the Oregon Department of Agriculture to adopt and promulgate as the law of this state future laws of the United States and regulations of the United States Department of Agriculture. Under the decisions of this and numerous other courts, such a delegation is unconstitutional. *Hillman v. Northern Wasco County People's Utility District*, 213 Or 264, 325 P2d 664; *Nostrand v. Balmer*, 153 Wash Adv Sh 431 (1959), 335 P2d 10; *State ex rel Kirschner v. Urquhart*, 50 Wash2d 131, 310 P2d 261; *Brock v. Superior Court*, 9Cal2d 291, 71 P2d 209, 114 ALR 127; *Holgate Bros. Co. v. Bashore*, 331 Pa 255, 200 At 672, 117 ALR 639; Annotation, 133 ALR 401. Adoption of existing statutes and regulations of the federal government or another state is, however, valid. 16 CJS 563, Constitutional Law § 133, b; 11 Am Jur 931, Constitutional Law § 219; *Brock v. Superior Court*, supra.

██ When a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference, and not as subsequently modified; whereas, where the reference is general, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws not only in their contemporary form but also as they may be changed from time to time. *Palermo v. Stockton Theatres*, 32 Cal2d 53, 195 P2d 1. See, also, *State ex rel v. Dobson*, 169 Or 546, 551, 130 P2d 939; *Noble v. Noble*, 164 Or 538, 551, 103 P2d 293; 82 CJS 847, Statutes § 370. Here, the legislature has not directly adopted any federal statute or regulation, but has authorized and directed an agency of the state to do so. We see no reason why the rules of construction

should be different in such a case. Of course, the ulti-
mate question is, what was the legislative intent?
Doubt should be resolved in favor of constitutionality.
As the court said upon a similar question in *Santee
Mills v. Query,* 122 SC 158, 168, 115 SE 202:

> "While the language used with respect to said
> 'rules and regulations' is perhaps broad enough to
> cover future rules and regulations, in the absence
> of a clear indication of a different intention, it
> will be presumed that it was the intent of the law-
> makers to restrict the application of the statutory
> provision in question to the legitimate field of
> legislation * * * [citing authorities], and that
> the rules and regulations thus adopted by refer-
> ence were those in force at the time of the approval
> of the Act. * * *"

*Palermo v. Stockton Theatres,* supra, is to the same
effect.

Under these principles of construction, we think
that so far as the statute relates to the "minimum regu-
lations and laws of the United States Department of
Agriculture necessary to enable the state of Oregon
and the counties to be modified, certified brucellosis-
free * * * areas and to maintain that status," the
authority delegated extends only to existing laws and
regulations, and not to subsequent modifications of
them.

The plaintiffs argue that this construction is in
conflict with the words "and to maintain that status"
in the statute. They say that the phrase means that
"the department is to adopt such rules and regulations
as will enable the state and counties to be modified,
certified brucellosis-free and tuberculosis-free at the
present time as well as in the future." We agree with
this interpretation of the language, but not with the

conclusion that the plaintiffs draw from it. The phrase in question is taken directly from Regulation No. 78.1 (i) above quoted. A modified certified brucellosis-free area is there defined as one in which the percentage of brucellosis in cattle does not exceed a specified maximum and the percentage of herds in which brucellosis is present does not exceed a specified maximum, "and which *maintains that status*" in accordance with the Uniform Methods and Rules adopted by the United States Livestock Sanitary Association and approved by the Branch. These "Uniform Methods and Rules" were in existence at the time that the regulation was promulgated, and the office where copies of them were available was designated. They provide in Part II for determining the extent of the area by the cooperating state and federal agencies, placing the area under quarantine, and determining by various tests of all cattle within the area whether the cattle and the herds complied with the requirements of the federal regulation. Where they do comply, the area is certified for a period of three years. During that period retesting at stated intervals is provided for, and at the end of the period there may be a recertification.

Thus, the regulation deals not only with achieving, but with maintaining the desired status over an indefinite period of years. ORS 597.206 (2) does no more than describe the particular regulation then in existence which the Department was directed to adopt, and the language relied on by counsel for the plaintiff has to do with a continuing process under that regulation and is not a direction to the Department to adopt future regulations of the federal government.

The plaintiffs contend that the authority to determine what shall constitute a modified, certified bru-

cellosis-free area has been re-delegated by the United States Department of Agriculture to a private agency, to-wit, the United States Livestock Sanitary Association. That is not our view of the meaning of Section 78.1 (i) of the regulations. The "Uniform Methods and Rules" of the Association became a part of the regulation, not automatically because of the mere fact of adoption by the Association, but as the result of the approval of the Branch, which must be assumed to have exercised its judgment as to the propriety of giving such approval, just as it did with respect to the other portions of the regulation.

The remainder of the sub-section (omitting the clause declared invalid by the circuit court) authorizes, although it does not require, the Department to adopt and promulgate as regulations any other laws or regulations of the federal government regarding movement of livestock, payment of indemnity, or the eradication or control measures necessary to prevent the spread of brucellosis, tuberculosis, paratuberculosis, or any infectious, contagious, communicable or dangerous livestock disease.

 Apart from the express reference to the adoption of federal laws and regulations, these are powers already conferred upon the Department, ORS ch 596, and especially 596.020 and 596.406. In exercising these powers, the Department is limited by the standards set forth in ORS 596.412 quoted above. They are, in our opinion, adequate standards to guide administrative action. The portion of ORS 597.206 with which we are now dealing is not to be treated in isolation, but in *pari materia* with chapter 596, of which it must be presumed that the legislature had knowledge at the time of the enactment of chapter 597. 50 Am Jur 354, Statutes § 354; *Noble v. Noble,* supra, 164 Or at

p. 549; *Cabell v. City of Portland,* 153 Or 528, 543, 57 P2d 1292. Therefore, we construe the provision not as a grant of *carte blanche* authority to adopt federal laws and regulations, but as the grant of a discretion, controlled by the standards to which we have referred, to adopt as regulations such federal laws and regulations as, in the judgment of the Department, would reasonably tend to effectuate the legislative purpose. Central to that purpose is the state policy of cooperation with the federal government in achieving a legitimate state end. So considered, there is no unlawful delegation of legislative authority, but only a delegation of authority to fill in the details by administrative action, the law being complete and entire as it came from the hands of the legislature. The authorities upon this subject are reviewed in the recent case of *State ex rel v. Malheur County Court,* 185 Or 392, 203 P2d 305. The rules which the cases enunciate are familiar and need not be here repeated. And the principle upon which we sustain this portion of the statute is recognized in *Hillman v. Northern Wasco County People's Utility District,* supra, 213 Or at p 284.

■ As previously stated, one clause of ORS 597.206 (2) was held unconstitutional by the circuit court. The defendant has not appealed from that portion of the decree, and the plaintiffs contend that the unconstitutional provision is not severable, and, therefore, that the entire sub-section must fall. But we think that this is clearly not so under our statute and the decisions of this court. ORS 174.040; *Dodd v. SIAC* on petition for rehearing, 211 Or 99, 111, 315 P2d 138; *State v. Hunter,* 208 Or 282, 288, 300 P2d 455; *Gilbertson v. Culinary Alliance,* 204 Or 326, 352, 282 P2d 632.

■ Another matter disclosed by the record should not go unnoticed.

The Act became effective on July 1, 1957, and on August 6, 1957, the Department issued administrative order No. AD 553, the preamble of which recites that it is promulgated pursuant to ORS ch 597. The order contains regulations intended to meet the minimum requirements of the federal regulations. On December 3, 1957, the Department issued administrative order No. AD 565, which revised the preamble to administrative order No. AD 553 by providing that it was promulgated pursuant to authority vested in the Department by ORS 596.010 to 596.470, more particularly, ORS 596.412 (which sets up standards for the guidance of the Department); by all of the sections of ORS ch 597 except 597.206; by Ch 390, Or Laws 1957 (an act relating to livestock auction markets, now part of ORS ch 599) with certain exceptions; and by ORS 561.190, which is a general grant of authority to the Department to make rules and regulations. Administrative order No. AD 565 contains the following statement: "The regulations contained in this Administrative Order are not promulgated under section 5 of chapter 234, Oregon Laws 1957 [ORS 597.206], and no regulations will be promulgated thereunder by the department."

It should be noted that order No. AD 565 was issued during the pendency of this suit and before the trial in the circuit court.

The situation thus presented is, to say the least, novel. The pleadings disclose a justiciable controversy. The complaint alleges that ORS ch 597 is unconstitutional and that the defendant threatens to enforce it. The defendant asserts the constitutional validity of the legislation, and says that he will enforce it. Yet, the record shows that the defendant has, in his official capacity, to all intents and purposes

repudiated the only section of the chapter which is in issue. It is true that counsel for the defendant in this court, and no doubt in the circuit court, argued that the section is valid. But his client says, in effect, "I am not acting under that section and do not intend to. I can accomplish the purpose of the statute under other provisions, and that is what I am doing and will continue to do."

It is possible, therefore, that this case is much ado about nothing; and, although it has not been suggested by either of the parties, we have given serious consideration to the question whether the suit should not be dismissed because of the absence of a justiciable controversy. See *Eacret v. Holmes,* 215 Or 121, 333 P2d 741; *Savage v. Martin,* 161 Or 660, 699, 700, 91 P2d 273; *Oregon Creamery Mfrs. Ass'n v. White,* 159 Or 99, 78 P2d 572. But see *Demers v. Peterson,* 197 Or 466, 254 P2d 213. We have resolved our doubts, however, in favor of retaining jurisdiction, because of the public importance of the questions involved.

The decree of the circuit court is affirmed.