NELSON, J.
*393 **107 This case is before us on a certified question from the United States Court of Appeals for the Ninth Circuit. At issue is the correct interpretation of ORS 30.905(2), which places limits on the timeframe for initiating a product liability civil action for personal injury or property damage. Oregon's statute of repose for product liability actions provides that an action "must be commenced before the later of * * * [t]en years after the date on which the product was first purchased * * * or * * * [t]he expiration of any statute of repose for an equivalent civil action in the state in which the product was manufactured." ORS 30.905(2). The certified question, rephrased for the sake of clarity,[1] is as follows: If the state of manufacture has no statute of repose for actions equivalent to an Oregon product liability action, is a product liability action in Oregon subject to any statute of repose? Miller v. Ford Motor Co. , 857 F.3d 1016, 1017 (9th Cir. 2017). For the reasons that follow, we answer in the negative: Under ORS 30.905(2), when an Oregon product liability action involves a product that was manufactured in a state that has no statute of repose for an equivalent civil action, then the action in Oregon also is not subject to a statute of repose.
We take the facts from the Ninth Circuit's certification order. Oregon resident Miller owned a Ford Escape, which was manufactured in June 2001 in the State of Missouri. The Escape was first sold to a consumer in September 2001. In May 2012, the Escape caught fire while parked in Miller's garage, allegedly due to a faulty sensor in the engine compartment. The fire spread from Miller's garage to her home, causing significant property damage. Miller also fractured her heel as she fled the fire.
In April 2014, Miller filed a product liability action in Oregon state court, alleging various design and manufacturing defects, as well as failures to warn. Invoking diversity jurisdiction, Ford removed the case to the US District Court for the District of Oregon and later moved for summary judgment, arguing that the Oregon statute of repose for product **108 liability actions barred Miller's claims because the Escape was first sold to a consumer more than 10 years before she filed her action. The district court denied the motion, concluding that Oregon's 10-year statute of repose did not apply because ORS 30.905(2)(b) required the court to apply the repose period of the state of manufacture. Because Missouri had no statute of repose for product liability actions, the district court concluded that no such limitation applied to bar Miller's claims. Ford appealed the district court's judgment, challenging the court's interpretation of ORS 30.905(2). The Ninth Circuit, after briefing and argument, certified the question at issue in this case.
Our task in interpreting a statute is to "pursue the intention of the legislature." ORS 174.020(1)(a). To that end, we review the text of the statute, in context, along with any relevant legislative history and settled rules of construction. State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009) (stating analysis). The statute at issue here, ORS 30.905, provides:
"(1) Subject to the limitation imposed by subsection (2) of this section, a product liability civil action for personal injury or property damage must be commenced not later than two years after the plaintiff discovers, or reasonably should have discovered, the personal injury or property damage and the causal relationship between the injury or damage and the product, or the causal relationship between the injury or damage and the conduct of the defendant.
"(2) A product liability civil action for personal injury or property damage must be commenced before the later of:
"(a) Ten years after the date on which the product was first purchased for use or consumption; or
"(b) The expiration of any statute of repose for an equivalent civil action in the *394 state in which the product was manufactured, or, if the product was manufactured in a foreign country, the expiration of any statute of repose for an equivalent civil action in the state into which the product was imported."
The statute of limitations set forth in ORS 30.905(1)"limit[s] the time a party has to initiate an action once a claim has accrued"; it is subject to a discovery rule, in that it "does **109 not begin to run until the injured party knows or should know that it has been injured." Shasta View Irrigation Dist. v. Amoco Chemicals , 329 Or. 151, 161, 986 P.2d 536 (1999). Subsection (2) sets forth a statute of repose, which establishes a "maximum time[ ] to file a claim, regardless of the date of discovery of an injury." Id . at 162, 986 P.2d 536.
As defendant reads ORS 30.905(2), when the manufacturing state lacks an applicable statute of repose, an Oregon plaintiff is bound by Oregon's 10-year limitation. Defendant argues that the text, context, and legislative history, as well as various constitutional concerns, require that interpretation. As plaintiff reads ORS 30.905(2), she should be entitled to utilize the same timeframe as would apply to an "equivalent civil action" in the manufacturing state; if the manufacturing state has no such statute, then she should not be bound by any statute of repose.
ORS 30.905(2) does not explicitly state what should occur when a manufacturing state does not have a statute of repose that would govern an "equivalent civil action." Defendant argues that the text appears to predicate the application of ORS 30.905(2)(b) upon the existence of a statute of repose in the state of manufacture. In defendant's view, the term "statute" is both limiting and dispositive. The absence of a statute of repose is not a "statute," defendant argues, and thus is not encompassed even by the inclusive term "any." Relatedly, ORS 30.905(2) states that an action must be commenced "before the later of" 10 years, or "[t]he expiration of any statute of repose for an equivalent civil action." (Emphasis added.) As defendant points out, if there is no statute of repose, then there is nothing to "expire."
Shifting our attention from the end-point imposed by a particular timeframe, however, and focusing instead on the legislature's use of the word "commenced," leads to a different understanding. ORS 30.905(2) states that an action "must be commenced before * * * [t]en years after the date on which the product was first purchased for use or consumption," or before "[t]he expiration of any statute of repose for an equivalent civil action" in the state of manufacture, whichever is "later." (Emphasis added.) It is possible to read **110 that text to mean that, when the manufacturing state does not have "any" statute of repose, there simply is no deadline by which a plaintiff must "commence" an action, other than the two-year statute of limitations provided in ORS 30.905(1).
Further supporting that interpretation, the text of ORS 30.905(2) suggests a legislative intent to give a plaintiff the benefit of the "later" of two timeframes: Ten years from the date of purchase or the time period that the plaintiff would have in which to bring an equivalent civil action in the state of manufacture. As both parties recognize, most states do not have statutes of repose for product liability actions. Although those states certainly would allow a plaintiff to file "later" than 10 years from the time of purchase, an Oregon plaintiff would not, under defendant's interpretation, be permitted to utilize that later timeframe. As plaintiff observes, the result would be that an Oregonian with a claim involving a product manufactured in a state with a statute of repose of 15 years would have 15 years within which to file her claim, whereas an Oregonian with a claim involving a product manufactured in a state without any limitation would be required to bring her claim within 10 years.
To resolve the textual ambiguity described above, we next consider the context and legislative history of ORS 30.905(2). The relevant context consists of case law interpreting ORS 30.905 and related statutes, which serves as a useful backdrop for the 2009 amendments that enacted ORS 30.905(2)(b). See Montara Owners Assn. v. La Noue Development, LLC , 357 Or. 333, 341, 353 P.3d 563 (2015) ("[t]he context for interpreting a statute's text includes the preexisting common *395 law"). As we explain below, context and legislative history clarify that the legislature intended to give Oregonians with claims involving products manufactured out of state the option of litigating their claims in Oregon courts, instead of requiring them to travel to the state in which the product at issue was manufactured.
Oregon's statutes of repose are the result of decades of negotiation and compromise between various business and consumer interests. ORS 12.115, which establishes a **111 statute of repose in tort actions, was enacted in 1967 in direct response to this court's decision in Berry v. Branner , 245 Or. 307, 421 P.2d 996 (1966). See DeLay v. Marathon LeTourneau Sales , 291 Or. 310, 312-13, 630 P.2d 836 (1981) (explaining origins of Oregon's first statute of repose). In Berry , this court held that Oregon's two-year statute of limitations for personal injuries, as applied to a medical malpractice action, did not commence running until the patient discovered or should have discovered the malpractice. 291 Or. at 312, 630 P.2d 836. The legislature responded by codifying the "discovery rule" articulated in Berry , while also enacting statutes of repose both for medical malpractice claims and for negligence claims generally. Id . at 313, 630 P.2d 836. The intent of the legislature in enacting those statutes was to provide a "maximum upper limit on the time within which a tort action could be brought, regardless of the date of discovery or of any other circumstances." Josephs v. Burns & Bear , 260 Or. 493, 498, 491 P.2d 203 (1971).
ORS 30.905 -which pertains to product liability cases specifically-was enacted in 1977, as a result of lobbying efforts by business and insurance organizations. Erickson Air-Crane Co. v. United Tech. Corp. , 303 Or. 281, 286, 735 P.2d 614 (1987). At the time of its passage, that statute contained an eight-year statute of repose for product liability actions. Or. Laws 1977, ch. 843, § 3. The legislature's intention in enacting ORS 30.905 was to "fix a limited and predictable time period in which a manufacturer, distributor, seller or lessor would be exposed to a product liability civil action," and in doing so, decrease the costs of liability insurance. Erickson Air-Crane Co. , 303 Or. at 286, 735 P.2d 614. Since the enactment of ORS 30.905, the legislature has created exceptions to lessen the potential unfair effect on litigants, by exempting various categories of claims from the statute of repose. See, e.g. , ORS 30.907(2) (product liability civil action for damages resulting from asbestos-related disease is not subject to ORS 30.905 ); ORS 30.908(2) (product liability civil action for death, injury, or damage resulting from breast implants containing silicone, silica, or silicon as a component not subject to ORS 30.905 ).
ORS 30.905(2)(b) was enacted in 2009, with the passage of Senate Bill (S.B.) 284. Representative Roblan **112 introduced the bill on the floor of the House of Representatives in the following manner:
"Today we have a bill that's come to us in different forms almost every session, for years. The whole idea of product liability, year after year, we get brought the egregious cases * * * and time after time we are asked to consider this ultimate repose on individual products, and exempt that product so that they can actually have a law suit, because we all agree that what happened was truly egregious."
Audio Recording, House Floor Debate, S.B. 284, June 12, 2009, at 1:56:32, https://olis.leg.state.or.us (accessed May 31, 2018). Instead of repealing the statute of repose, as had been proposed and rejected during the previous legislative session, see S.B. 444 (2007), S.B. 284 made minor alterations favorable to plaintiffs: It extended Oregon's statute of repose from eight years to 10 years; it created a special exception to the 10-year limit for Oregon plaintiffs injured by halide lightbulbs; and it added the provision at issue in this case, which relates to products manufactured out of state or overseas.
In explaining the section of the bill that would become ORS 30.905(2)(b), Roblan began by noting that, for products built and produced in Oregon, Oregon's statute of repose was "one of the strictest * * * in the country." ORS 30.905(2)(b) -which Roblan and others referred to as the "look-away" provision-"[would] not change [the statute of repose]," but it provided "one other, rather elegant way of protecting our citizens against improper production in states outside *396 of Oregon." That "other * * * way" of protecting Oregon consumers was as follows:
"[I]f a product is produced in another state outside of Oregon, * * * we should use the statute of repose in that state. That producer works there, wants to be there, has already understood that repose in their state. It does not cause an aggrieved person in our state to have to go to that state to file the law suit, no, they can stay right here in Oregon, and they can have their day in court, based on the other state's limit of repose ."
Audio Recording, House Floor Debate, S.B. 284, June 12, 2009, at 1:58:30 (emphasis added), https://olis.leg.state.or.us (accessed May 31, 2018). Roblan thus understood the **113 look-away provision as a means of "protecting" Oregon plaintiffs by allowing them to bring their claims involving out-of-state manufacturers in Oregon courts, without significantly expanding manufacturer liability.
Over the course of the session, Roblan repeatedly stated that S.B. 284 would benefit Oregon plaintiffs by enabling them to litigate their claims without leaving the state. During the House floor debate, Roblan noted that, under current law, an Oregonian who has been injured by an out-of-state product and who is barred by Oregon's 10-year statute of repose "ha[s] to raise money to go to another state." With the passage of S.B. 284, that Oregonian could bring his or her action "right here at home." Audio Recording, House Floor Debate, S.B. 284, June 12, 2009, at 2:27:05, https://olis.leg.state.or.us (accessed May 31, 2018). At a Senate Judiciary Committee hearing, a legislator asked whether it was "the intent that [an Oregonian injured by a product manufactured in Wisconsin] would look to Wisconsin for their statute of * * * repose if the product was manufactured there, but still be able to bring his case in Oregon?" Roblan answered in the affirmative, elaborating, "What we're saying is, it's kind of like the existing law, except we don't have to go to Alabama * * * to file the suit in Alabama-we can file in Oregon using Alabama's statutory framework for repose, their timeline." Audio Recording, Senate Judiciary Committee, S.B. 284, Apr. 28, 2009, at 00:26:50, https://olis.leg.state.or.us (accessed May 31, 2018). See also Audio Recording, House Floor Debate, S.B. 284, June 12, 2009, at 2:11:30 (testimony of Rep Richardson that S.B. 284 "allows injured citizens to have a cause of action in their own state, but without expanding by very much the [statute of repose] for Oregon manufacturers"), https://olis.leg.state.or.us (accessed May 31, 2018).
It is clear that the legislature intended S.B. 284 to allow Oregonians to bring their claims involving products manufactured out of state in Oregon courts. The history also is clear that the legislature intended to extend that benefit to all Oregonians with such claims, not just to those with claims involving states that had enacted statutes of repose. Roblan expressed that understanding in response to **114 a question from Representative Olson, regarding the applicability of statutes of repose when products enter the United States through different ports of entry. Roblan's testimony indicated that, when a product enters through a port in a state that does not have a statute of repose, a product liability action would not be subject to Oregon's 10-year limitation. Audio Recording, House Floor Debate, S.B. 284, June 12, 2009, at 2:12:50 (so explaining), https://olis.leg.state.or.us (accessed May 31, 2018). Representative Olson, who opposed the bill, agreed with Roblan's interpretation. See id .
Representatives Whisnant and Cameron, who also opposed the bill, articulated most directly the idea that Oregonians with claims involving products manufactured in states without statutes of repose would not be bound by Oregon's 10-year limit:
"There is no time limit. Under this bill, an Oregon manufacturer could face liability for a product that * * * made the Model-T * * *. If one part of a product assembled in Oregon comes from a state or a port of entry where there is no statute of repose, then an Oregon manufacturer would face virtually unlimited liability."
Id . at 2:19:23 (testimony of Rep Cameron); see also id . at 2:03:25 (testimony of Rep Whisnant that bill "implements a * * * look around approach" that would "apply[ ] the statute of repose, or lack thereof, in the state of the * * * manufacturer"), https://olis.leg.state.or.us (accessed May 31, 2018); Exhibit *397 5, Senate Committee on Rules, S.B. 284, June 1, 2009 (statement of Tom Holt, describing bill as implementing a "radical look-away approach," resulting in unlimited liability where state has no statute of repose); Exhibit 6, Senate Committee on Rules, S.B. 284, June 1, 2009 (statement of Associated Oregon Industries, arguing that the fact that 30 states have no statutes of repose would "create [ ] uncertainty" and expose Oregon companies to potentially "limitless exposure to liability"). No proponent of S.B. 284 challenged Cameron or Whisnant's interpretation of the bill.
The above-described understanding of the legislature's intent is further supported by various legislators'
**115 references to a Nebraska statute, which allowed Nebraska plaintiffs to utilize the repose period available to them in the state of manufacture even when the manufacturing state had not enacted a statute of repose. Although the legislature did not adopt the text of the Nebraska statute verbatim, the history makes clear that the legislature utilized the Nebraska statute as a guide. See, e.g. , Audio Recording, House Floor Debate, S.B. 284, June 12, 2009, at 1:58:45 (testimony of Rep Roblan that "[o]ne other state, Nebraska" had passed an analogous law), https://olis.leg.state.or.us (accessed May 31, 2018); id . at 2:03:25 (testimony of Rep Whisnant that bill "implements a * * * look around approach" that "only one other state has adopted").
In sum, a review of the legislative history reveals that the text at issue in this case-now codified as ORS 30.905(2)(b) -was contained in S.B. 284 when it was introduced in January 2009, remained unchanged throughout the committee process, and was ultimately enacted into law without amendment. The discussions concerning the effect of ORS 30.905(2)(b) indicate an understanding that the provision could be utilized by Oregon plaintiffs in cases involving products manufactured in states without statutes of repose. There is no suggestion in the legislative record that such a plaintiff would instead be bound by Oregon's 10-year limitation.
Defendant argues that the foregoing interpretation of ORS 30.905(2) will significantly expand liability exposure for out-of-state manufacturers, in-state manufacturers who utilize component parts manufactured in other states, and in-state suppliers, sellers, distributors, and lessors. The 2009 Legislative Assembly, defendant argues, could not have intended that result. In the hearings on S.B. 284, the legislature heard testimony from the Oregon Liability Reform Commission and Associated Oregon Industries regarding the perceived negative effects of the bill; it nonetheless decided to retain, without alteration, the language that is now codified as ORS 30.905(2)(b). In doing so, the legislature's understanding was that Oregonians in plaintiff's position already could sue in the state of manufacture, where that state's statute of repose-or lack thereof-permitted **116 it.[2] It was not the legislature's intent to significantly expand liability, but to allow Oregon plaintiffs to bring their claims involving out-of-state manufacturers in Oregon courts.
Having determined the correct interpretation of ORS 30.905(2), we turn to defendant's final argument: That any interpretation of ORS 30.905(2)(b) that is not limited to circumstances in which the manufacturing state had a statute of repose in 2009-the year that S.B. 284 was enacted-violates Article I, section 21, of the Oregon Constitution, as an impermissible delegation of legislative authority.[3] Article I, section 21, prohibits the legislature from enacting any law "the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution." This court has held that Article I, section 21, prohibits the legislature from "confer[ring] upon any person, officer, agency or tribunal the power to determine *398 what the law shall be." Van Winkle v. Fred Meyer, Inc. , 151 Or. 455, 462, 49 P.2d 1140 (1935). That is because the power to make and declare laws is vested exclusively in the Oregon Legislative Assembly, subject only to the initiative and referendum powers reserved to the people. Id .
Although the legislature cannot delegate its authority, it may enact legislation that incorporates existing statutes or regulations of the federal government or of another state, and it also may authorize or direct an agency to do so. Seale et al. v. McKennon , 215 Or. 562, 572-73, 336 P.2d 340 (1959) (statute directing Oregon State Department of Agriculture to promulgate as regulations certain minimum regulations and laws of the United States Department of Agriculture did not violate the Oregon Constitution). Constitutional issues may arise, however, when such provisions are interpreted to automatically incorporate subsequent changes in **117 the foreign law on which they are based. Id . at 572, 336 P.2d 340 ; see also Hillman v. North ern Wasco Co. PUD , 213 Or. 264, 284, 323 P.2d 664 (1958), overruled in part on other grounds by Maulding v. Clackamas County , 278 Or. 359, 563 P.2d 731 (1977) (although an agency may adopt a "particular edition" of another body's code, it may not prospectively adopt subsequent changes to that code); Osborn v. PSRB , 325 Or. 135, 145-47, 934 P.2d 391 (1997) (PSRB could define mental disease or defect in part by reference to the "current" DSM, where "current" DSM meant the edition in effect at the time that the rule was adopted). Defendant argues that, pursuant to that line of cases, this court is required to interpret ORS 30.905(2)(b) to extend only to the statutes of repose that were in effect in other states in 2009 or that, alternatively, ORS 30.905(2)(b) is unconstitutional as beyond the legislature's authority.
In passing S.B. 284, the legislature did not confer upon any state's legislature the power to say what Oregon law should be. Oregon's statute of repose for product liability actions is 10 years; Oregon law also creates an exception to that limit when a plaintiff would have longer than 10 years to file an "equivalent civil action" in the state of manufacture. Although ORS 30.905 allows an Oregon plaintiff to utilize the repose period that would apply to an equivalent action in the manufacturing state, it does not delegate authority to foreign legislatures to create Oregon law. In that respect, ORS 30.905(2)(b) is more analogous to a choice-of-law provision than it is to the legislation examined in Seale . "Each state has rules to determine which law * * * shall be applied by it to determine the rights and liabilities of the parties resulting from an occurrence involving foreign elements." Restatement (Second) of Conflict of Laws § 2 (1971). Choice-of-law provisions do not convert foreign law into Oregon law; they "do not themselves determine the rights and liabilities * * *, but rather guide [the] decision as to which local law rule will be applied to determine these rights and duties." Id .
The Uniform Conflict of Laws-Limitations Act (codified at ORS 12.410 - ORS 12.480 ), which provides guidance as to which statute of limitations should apply when an Oregon claim is based on the law of another state, is a useful example of how a choice-of-law provision can operate. If a claim is substantively based upon another state's law, then the **118 limitation period of that state applies. ORS 12.430(1)(a). If a claim is substantively based upon the law of more than one state, then the court utilizes Oregon's conflict of laws statutes to determine the appropriate limitation period; otherwise, Oregon's limitation period applies. ORS 12.430(1)(b) - (2). ORS 12.450 creates an exception to those general rules, providing that, if the applicable limitation period of another state is "substantially different from the limitation period of this state and has not afforded a fair opportunity to sue upon, or imposes an unfair burden in defending against the claim," then Oregon's statute of limitations applies. ORS 12.450. ORS 12.430 and ORS 12.450 do not delegate legislative authority to other states; rather, they provide for circumstances under which the statutes of limitations enacted by other states will apply in Oregon courts. Like those statutes, ORS 30.905(2) creates a framework in which Oregon's statute of repose will apply in some cases, and a foreign *399 state's statute of repose, or lack thereof, will apply in other cases. In neither instance has the legislature delegated law-making authority to a foreign body.
We hold that, under ORS 30.905(2), when an Oregon product liability action involves a product that was manufactured in a state that has no statute of repose for an equivalent civil action, then the action in Oregon also is not subject to a statute of repose.
The certified question is answered.

See Cash Flow Investors, Inc. v. Union Oil Co. , 318 Or. 88, 90, 862 P.2d 501 (1993) (this court has the discretion to restate or clarify a certified question).

Defendant points out that, although proponents of S.B. 284 assumed that an Oregonian with a claim involving a product manufactured in a state with a shorter statute of repose-or with no statute of repose at all-could travel to that other state and make use of its law, that may not always be the case, depending on applicable choice-of-law statutes. For the purposes of this opinion, we observe only that the legislature made that assumption when S.B. 284 was being discussed.

Defendant also argues that plaintiff's interpretation of ORS 30.905 (2)(b) violates the dormant Commerce Clause. We reject that argument without discussion.