Argued October 12, 1972, reversed and remanded
February 15, 1973

RUBY D. ERWIN, *Appellant, v.* THOMAS ET AL,
*Respondents.*

506 P2d 494

*Chris P. Ledwidge,* Portland, argued the cause for appellant. With him on the briefs were Ledwidge & Ledwidge, Portland.

*Charles R. Holloway, III,* Portland, argued the cause for respondents. With him on the brief were Tooze, Kerr & Peterson, Portland.

HOLMAN, J.

This is an action for damages for loss of consortium alleged to have been suffered when plaintiff's husband was injured in an accident. Plaintiff appealed from a judgment for defendant which was entered after a demurrer was sustained to plaintiff's complaint and plaintiff refused to plead further.

Defendant Thomas, while operating a truck in the state of Washington in the course of his employment for defendant Shepler, is alleged to have negligently injured plaintiff's husband. Defendant Thomas is an Oregon resident and his employer, defendant Shepler, is an Oregon corporation. Plaintiff and her injured husband are residents of Washington. Washington, by court decision, has followed the common law rule that no cause of action exists by a wife for loss of consortium. *Ash v. S. S. Mullen, Inc.,* 43 Wash 2d 345, 261 P2d 118 (1953). Oregon allows such an action, ORS 108.010.

The issue is whether Oregon law or Washington law is applicable. It is with some trepidation that a court enters the maze of choice of law in tort cases.

No two authorities agree.[1] Until recently, this court was committed to the traditional, arbitrary, and much criticized rule that in tort cases the law of the place of the wrong, *lex loci delicti commissi,* governs. However, in the case of *Casey v. Manson Constr. Co.,* 247 Or 274, 428 P2d 898 (1967), this court adopted the equally maligned and almost universally criticized "most significant relationship"[2] approach of Restatement (Second) Conflict of Laws.

---

[1] The writer of this opinion has a suspicion that where actual and substantial conflicts exist the problems are not capable of rational solution except on an ad hoc basis.

[2] "§ 145. The General Principle

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

"§ 6. Choice-of-Law Principles

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

However, before engaging in the mysteries of the solution of an actual conflict, we must make certain that we have a conflict of consequence which requires a choice. All authorities agree that there is such a thing as a false conflict which requires no choice. However, typically, there is no agreement on what constitutes a false conflict. Professors Cavers,[3] Currie,[4] and Sedler,[5] together with Mr. Justice Traynor,[6] appear to urge that the policy or governmental interest behind the law of each state be examined and that a false or avoidable conflict be considered present if no substantial conflict is found to exist between the states' policies or interests in the particular factual context in which the question arises.[7] On the other hand, Professors Leflar,[8] Rosenberg,[9] and Ehrenzweig[10] see a false conflict as being limited to a situa-

---

"(e) the basic policies underlying the particular field of law,
"(f) certainty, predictability and uniformity of result, and
"(g) ease in the determination and application of the law to be applied."

[3] David F. Cavers, Professor of Law, Emeritus, Harvard University.

[4] Brainerd Currie, William R. Perkins Professor of Law, Duke University.

[5] Robert A. Sedler, Professor of Law, University of Kentucky.

[6] Roger J. Traynor, Chief Justice of California, retired.

[7] See *Symposium, Conflict of Laws Round Table*, 49 Tex L Rev 211 (1971); B. Currie, SELECTED ESSAYS ON THE CONFLICT OF LAWS 189-90 (1963); Traynor, *Is this Conflict Really Necessary?*, 37 Tex L Rev 657 (1959); D. Cavers, THE CHOICE OF LAW PROCESS 72-74 (1965).

[8] Robert A. Leflar, Professor of Law, New York University, and Distinguished Professor of Law, University of Arkansas, former Justice, Supreme Court of Arkansas.

[9] Maurice Rosenberg, Professor of Law, Columbia University.

[10] Albert A. Ehrenzweig, William Perry Johnson Professor of Law, University of California School of Law (Berkeley).

ation where the laws of two states are the same or would produce the same results. Where the laws of two states are not the same or would not produce the same results if applied, these latter authorities see the search for and the comparison of the interests of the two states as a means (not necessarily the best or only means) of deciding an actual conflict, not as a means of determining whether a conflict exists.[⊕]

■ Where, in the particular factual context, the interests and policies of one state are involved and those of the other are not (or, if they are, they are involved in only a minor way), reason would seem to dictate that the law of the state whose policies and interests are vitally involved should apply; or, if those of neither state are vitally involved, that the law of the forum should apply. It may well be that determining what interests or policies are behind the law of a particular state is far from an exact science and is something about which there can be legitimate disagreement; but, on the other hand, it is the kind of an exercise, for better or for worse, which courts do every day and, therefore, feel secure in doing. If such a claimed conflict can be so disposed of, whether it is called false or not, the disposition certainly seems preferable to wandering off into the jungle with a compass which everyone but its maker says is defective.

■ Let us examine the interests involved in the present case. Washington has decided that the rights of a married woman whose husband is injured are not sufficiently important to cause the negligent defendant

---

[⊕] See Leflar, *True "False Conflicts," Et Alia,* 48 Boston U L Rev 164 (1968); *Symposium, Conflict of Laws Round Table,* 49 Tex L Rev 211 (1971); Ehrenzweig, *A Counter-Revolution in Conflicts Law? From Beale to Cavers,* 80. Harv L Rev 377 (1966).

who is responsible for the injury to pay the wife for her loss. It has weighed the matter in favor of protection of defendants.[20] No Washington defendant is going to have to respond for damages in the present case, since the defendant is an Oregonian. Washington has little concern whether other states require non-Washingtonians to respond to such claims. Washington policy cannot be offended if the court of another state affords rights to a Washington woman which Washington does not afford, so long as a Washington defendant is not required to respond. The state of Washington appears to have no material or urgent policy or interest which would be offended by applying Oregon law.

On the other hand, what is Oregon's interest? Oregon, obviously, is protective of the rights of married women and believes that they should be allowed to recover for negligently inflicted loss of consortium. However, it is stretching the imagination more than a trifle to conceive that the Oregon Legislature was concerned about the rights of all the nonresident married women in the nation whose husbands would be injured outside of the state of Oregon. Even if Oregon were so concerned, it would offend no substantial Washington interest.

It is apparent, therefore, that neither state has a vital interest in the outcome of this litigation and there can be no conceivable material conflict of policies or interests if an Oregon court does what comes

---

[20] *See* Casey v. Manson Constr. Co., 247 Or 274, 290-91, 428 P2d 898 (1967).

naturally and applies Oregon law.[9] Professor Currie expresses it thusly:

> "* * * The closest approximation to the renvoi problem that will be encountered under the suggested method is the case in which neither state has an interest in the application of its law and policy; in that event, the forum would apply its own law simply on the ground that that is the more convenient disposition * * *." B. Currie, *Notes on Methods and Objectives in the Conflict of Laws,* SELECTED ESSAYS ON THE CONFLICT OF LAWS 184 (Footnote omitted) (1963).

An examination of the writings of those scholars who believe that an actual controversy exists in a situation

---

[9] A recent case involving a similar problem is Berghammer v. Smith, 185 NW2d 226 (Iowa 1971), in which a Minnesota wife sought damages for injuries suffered by her husband in an Iowa accident. The defendant was an Illinois resident. Both Iowa and Illinois allowed the wife's action for loss of consortium. At the time of the accident, the Minnesota rule did not permit the action. Before the trial, however, Minnesota, by judicial decision, changed its rule to allow recovery but determined that the new rule would be applied prospectively only. The Iowa court, which had previously adopted the Restatement (Second) approach to conflicts in tort law, determined that Minnesota, as the marital domicile, was the state with the most significant relationship with the plaintiff and the issue involved. The court was then faced with the problem whether to apply Minnesota law as it existed at the time of the accident, denying the plaintiff's action, or to give effect to the new Minnesota rule which would allow the action. The court chose to apply the new rule, stating:

> "By enforcing the now discarded Minnesota rule, we would ignore our own state policy without advancing Minnesota's. Certainly Minnesota's purpose was not to protect non-resident motorists who had not relied upon the old rule at the expense of its own citizens." 185 NW2d at 233.

If the court had made its examination of the relevant interests of Minnesota before it uncritically decided that the law of the marital domicile should be applied, it would have been apparent from the beginning that Minnesota had no interest in the application of its rule denying recovery under the circumstances, and that Minnesota's interests would not be violated by allowing the plaintiff to recover. Minnesota's new rule, and its prospective application by the Minnesota court, would have caused no difficulty.

similar to the present indicates, without an exception, they would reach the same result as we do, by either different or partially different reasoning.

The next question is whether our decision in *Casey v. Manson Constr. Co.,* 247 Or 274, 428 P2d 898 (1967), is incompatible with our disposition of the present case. In *Casey,* which adopted and applied Restatement (Second) Conflict of Laws, an actual conflict existed. An Oregon wife brought a loss of consortium action because of an injury to her husband, also an Oregon resident, which was negligently inflicted in Washington by a Washington resident. We there held that Washington defendants should not be required to accommodate themselves to the law of the state of residence of any traveler whom they might injure in Washington; that under the given circumstances, Washington's interest in the matter, which was protective of Washington defendants, was paramount to Oregon's interest in having its resident recover for her loss; and that Washington's relationship was the more significant and Washington law applied.

Our confidence in any set body of rules as an all-encompassing and readily applicable means of solution to conflict cases is not so great that we desire to undertake the application of such rules except in those situations where the policies and interests of the respective states are in substantial opposition. We see no such conflict here and, therefore, find it unnecessary to resort to any such set of rules. We are little concerned whether we are presented with a false conflict or with an actual conflict capable of solution by resorting to our analysis of the interests and policies of the respective states. Where such policies and interests can be identified with a fair degree of assur-

ance and there appears to be no substantial conflict, we do not believe it is necessary to have recourse in the "contacts" of Section 145(2) of Restatement (Second) Conflict of Laws.

The judgment of the trial court is reversed and the case is remanded for further proceedings.

TONGUE, J., concurs in the result.

BRYSON, J., dissenting.

This vehicle accident occurred in the state of Washington. The defendant Shepler, the truck driver, is an Oregon resident and his employer, Shepler Refrigeration, Inc., is an Oregon corporation. Plaintiff and her injured husband are residents of the state of Washington.

The plaintiff brought this action in Oregon to recover damages for loss of consortium. As stated in the majority opinion, Washington, by common law decision, denies the wife a right of action for loss of consortium for injury to her husband. *Ash v. S. S. Mullen, Inc.*, 43 Wash 2d 345, 261 P2d 118 (1953). Oregon, by statute, allows such an action. ORS 108.010. This statute establishes that all Oregon wives have the same civil rights as Oregon husbands, including the "right of action for loss of consortium of her husband." I fail to see how the Oregon legislature can do as much for Washington wives.

Regardless of whether we follow the Restatement (see Note 2 of the majority opinion) or the law of the place of the wrong, I do not believe we can or should bestow Oregon statutory rights for women on women of the state of Washington.

In *Berghammer v. Smith*, 185 NW 2d 226, 231, 232 (Iowa 1971), the same problem arose in an action for loss of consortium. The accident occurred in Iowa

and the plaintiff resided in Minnesota, which state, at the time, denied the plaintiff the right to bring an action for loss of consortium. The Iowa court stated:

"We hold Minnesota has the most significant —indeed, perhaps the only—relationship with plaintiff and the issue of her right to maintain an action for loss of consortium. We reach this conclusion because only Minnesota is concerned with the marital status of plaintiff and the interspousal rights and duties arising therefrom.

"Iowa has no state interest to protect * * *.

"Nor may it be said our policy recognizing a wife's claim for loss of consortium was intended primarily to do more than extend such right to Iowa wives.

"* * * * *

"There is considerable authority that matters which depend upon the marital relationship for their solution should be decided by the law of the husband-wife domicile. See Reich v. Purcell, 67 Cal.2d 551, 63 Cal. Rptr. 31, 432 P2d 727; Wartell v. Formusa, 34 Ill.2d 57, 213 N.E.2d 544; Schwartz v. Schwartz, 103 Ariz. 562, 447 P.2d 254; Haumschild v. Continental Casualty Company, 7 Wis.2d 130, 138, 95 N.W.2d 814, 818; Thompson v. Thompson, 105 N.H. 86, 89, 193 A.2d 439."

Obviously the plaintiff could not bring this action in her state, Washington, but the majority opinion holds that by merely stepping over the state boundary into Oregon she is then bestowed with the right given wives who are residents of the state of Oregon, which includes the right of action for loss of consortium of her husband.

There is definitely a conflict in the policy of the states of Washington and Oregon regarding the right to bring an action for loss of consortium.

I would affirm.