Argued and submitted September 19, 2019; decision of Court of Appeals affirmed, judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings April 23, 2020

PORTFOLIO RECOVERY ASSOCIATES, LLC,
*Respondent on Review,*

*v.*

Jason SANDERS,
*Petitioner on Review.*

(SC S066455)

PORTFOLIO RECOVERY ASSOCIATES, LLC,
*Petitioner on Review,*

*v.*

Jason SANDERS,
*Respondent on Review.*

(SC S066456)

(CC 14CV05489) (CA A159821)
(SC S066455 (Control), S066456)

462 P3d 263

This case arises out of Portfolio's action to recover a credit card debt from Sanders. Portfolio filed a motion for summary judgment, arguing that it was entitled to prevail under the common-law claim for an "account stated." Sanders also filed a motion for summary judgment, arguing that he was entitled to prevail on his affirmative defense that the claim was governed by, and barred by, the statute of limitations of Virginia. The Court of Appeals determined that neither party was entitled to summary judgment. Portfolio and Sanders sought review, and this court allowed both petitions. *Held*: After considering ORS 12.430, the choice-of-law statute for statutes of limitations, and ORS 15.360, the applicable choice-of-law statute for contracts, the court determined that those statutes do not resolve which state's law should apply in the scenario presented by this case: when the parties have not chosen which law ought to apply; when the contract choice-of-law statutes do not prescribe which law ought to apply; when the parties agree that the underlying, substantive law of the two involved states is "the same"; and when the parties have identified a difference of consequence in the states' statutes of limitations. To answer the narrow question presented by that scenario, the court determined that it must return to the common law, and that under the common law, Oregon substantive law applies because there is no "conflict of consequence." Under ORS 12.430(2), Oregon's statute of limitations applies, and the claim is not time-barred. Thus, Sanders is precluded from prevailing on summary judgment on that basis. Portfolio is also precluded from prevailing on summary judgment because there are genuine issues of material fact regarding whether the bank intended the relevant credit card bill to be the "final accounting" between the bank and Sanders.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

Tomio Buck Narita, Simmonds & Narita LLP, San Francisco, California, argued the cause for the petitioner on review Portfolio Recovery Associates, LLC. Jeffrey A. Topor filed the briefs for petitioner on review Portfolio Recovery Associates and the brief for respondent on review Portfolio Recovery Associates, LLC. Also on the briefs was Julie A Smith, Cosgrave Vergeer Kester, LLP, Portland.

Bret A. Knewtson, Law Office of Bret A. Knewtson, Hillsboro, argued the cause and filed the brief for respondent on review Jason Sanders, and filed the briefs for petitioner on review Jason Sanders.

Nadia H. Dahab, Stoll Stoll Berne Lokting Shlachter PC, Portland, filed the brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

FLYNN, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

_____
* Appeal from Multnomah County Circuit Court, Eric J. Neiman, Judge pro tempore. 292 Or App 463, 425 P3d 455 (2018).

**FLYNN, J.**

This case arises out of Portfolio Recovery's action to recover a credit card debt from Sanders under a common-law claim for an "account stated," which we have described as "'an agreement between persons who have had previous transactions of a monetary character fixing the amount due in respect to such transactions and promising payment[.]'" *Sunshine Dairy v. Jolly Joan*, 234 Or 84, 85, 380 P2d 637 (1963) (quoting *Steinmetz v. Grennon*, 106 Or 625, 634, 212 P 532 (1923)). The parties filed competing motions for summary judgment in the trial court—Portfolio contending that it was entitled to summary judgment on the merits of its account-stated claim and Sanders contending that he was entitled to summary judgment on his affirmative defense that the claim is governed by, and barred by, the statute of limitations of Virginia, a state with connections to the underlying credit card agreement. The Court of Appeals held that neither party was entitled to summary judgment, and both parties sought review.

The case presents two distinct issues: first, whether an account-stated claim is established as a matter of law when a credit card customer fails to object to the amount listed as the "new balance" on a credit card statement and, second, how Oregon's choice-of-law principles resolve a conflict between competing state statutes of limitations when the relevant substantive law of the two states is the same. We agree with the Court of Appeals that neither party is entitled to prevail on summary judgment.

## I.   BACKGROUND

In reviewing the parties' competing motions for summary judgment, we view the evidence for each motion "and all reasonable inferences that may be drawn from the evidence in the light most favorable" to the party opposing the motion to determine whether the moving party has demonstrated that "it is entitled to judgment as a matter of law." *TriMet v. Amalgamated Transit Union Local 757*, 362 Or 484, 491, 412 P3d 162 (2018). We describe the pertinent facts in light of that standard.

Portfolio brought the present action after acquiring the right to collect Sanders's credit card debt from Capital

One Bank (USA), N.A., with which Sanders had entered into a credit card agreement. Pursuant to the terms of that agreement, Capital One sent Sanders monthly statements showing his balance, which included fees and interest charged on previous balances. In late 2009, Capital One suspended Sanders's use of the account because he had missed several monthly payments, but it continued to send monthly statements reflecting a balance that rose each month due to the addition of interest and fees.

In March 2010, the statement that Capital One sent to Sanders advised that his account was "now 7 payments past due"; that his "new balance," including accrued interest and late fees, was $1,494.85; and that he would be contacted soon "to discuss options for resolving [his] debt." The statement also advised that the amount listed as "due" was not necessarily the "payoff amount" for various reasons, including that charges might be added or that "the amount you owe may differ if you've entered into a separate payment arrangement." Sanders did not object to Capital One's statement of the balance due on the account, but he also made no payments toward that balance.

After March 2010, Capital One continued to send Sanders statements, although no longer on a monthly basis. The record includes a statement from August 2011 listing a "new balance" of $1,918.60, which included interest charges for the year to date of just over $222. Eventually, Capital One assigned its rights in the debt to Portfolio in 2013. At that time, Capital One calculated the balance of Sanders's account as $2,039.21.

Although the credit card statements in the record were addressed to Sanders at locations in Washington and Utah, he lived in Oregon in 2014—when Portfolio filed the present action in Multnomah County Circuit Court. Portfolio's complaint asserted that it was the assignee of Capital One's claim against Sanders for "account stated."[1]

---

[1] When another person is substituted in place of the creditor in relation to a debt, the substitute is given "all of the rights, priorities, remedies, liens and securities of the party for whom he is substituted." *Maine Bonding v. Centennial Ins. Co.*, 298 Or 514, 521, 693 P2d 1296 (1985) (quoting *United States F. & G. Co. v. Bramwell*, 108 Or 261, 277, 217 P 332 (1923)).

It alleged that Sanders became obligated to pay $1,494.85 (the amount set out as the "new balance" in the March 2010 credit card statement) because, "[b]y failing to object or otherwise dispute" the credit card statement, Sanders "impliedly agreed to pay the stated balance[.]" When Portfolio moved for summary judgment, it argued that the "new balance" set out in the March 2010 credit card statement was a "final accounting" of Sanders's debt and that Sanders's admitted failure to object before the lawsuit was filed established—as a matter of law—that Sanders impliedly promised to pay that amount. On those facts, Portfolio contended, Sanders became liable under the common-law doctrine of "account stated."

Sanders responded with a pleading that combined his opposition to Portfolio's motion and his own cross-motion for summary judgment. In opposing Portfolio's motion, Sanders argued that the record permitted a reasonable inference that neither he nor Capital One intended to agree that the amount stated as "due" in the March 2010 statement was a final accounting of his debt to Capital One. Sanders also argued that Portfolio's account-stated claim was contrary to the terms of the express credit card contract,[2] including because the balance Portfolio sought to recover as an "account stated" was calculated by including fees that the express contract did not permit Capital One to charge.

In support of his own motion for summary judgment, Sanders argued that Portfolio's claim should be governed by Virginia law and that the claim was untimely under Virginia's three-year statute of limitations for contract claims. Va Code Ann § 8.01-246(4). Sanders pointed to evidence that Capital One is chartered under Virginia law and that its cardholder agreement provides, "[t]his Agreement will be interpreted using Virginia law," which

_____

[2] The record contains what Sanders describes as a "generic" Capital One cardholder agreement, which neither party describes as the actual agreement between Sanders and Portfolio. However, because Portfolio produced the agreement in response to Sanders's request for production of the actual agreement, Sanders has relied on it as representative of the terms that Portfolio believes the actual agreement contains. We agree that that is a permissible inference and refer to the agreement contained in the record for that purpose.

Sanders contended gave Virginia the only relevant connection to the claim. Portfolio did not dispute that the account-stated claim would be barred under Virginia's statute of limitations. But it contended that Oregon law governs the claim and that the claim was timely filed under Oregon's six-year statute of limitations for claims sounding in contract, ORS 12.080.

The trial court ruled for Portfolio on both motions, and Sanders appealed. Although the Court of Appeals ultimately agreed with Sanders's argument that genuine issues of material fact preclude Portfolio from prevailing as a matter of law on the account-stated claim, the court first disagreed with Sanders's argument that Virginia law supplies the applicable statute of limitations. *Portfolio Recovery Association v. Sanders*, 292 Or App 463, 468, 425 P3d 455 (2018). With respect to the limitations issue, the court addressed the conflict by turning first to ORS 15.360, which generally "govern[s] the choice of law applicable to any contract, or part of a contract," if the parties have not made "an effective choice of law."[3] *Id*. at 470; *see* ORS 15.305; ORS 15.360. That statute requires the court to begin by identifying "the states that have a relevant connection with the transaction or the parties" and then to evaluate "the relative strength and pertinence" of the "policies underlying any apparently conflicting laws" of the states having "a relevant connection." ORS 15.360.

The Court of Appeals answered that inquiry by concluding that the summary judgment record did not reveal that either Virginia or Oregon had "a relevant connection with the transaction or the parties" because neither state had a connection that was "of the type that evidences a *state* interest in having its law applied to Portfolio's claim." 292 Or App at 471 (emphasis in original). The court then defaulted to applying Oregon's statute of limitations because, it reasoned, "[w]here neither state has a connection to the transaction such that it has an interest in having its law applied, we

---

[3] The cardholder agreement in the record specifies that the applicable statute of limitations for all purposes, "including the right to collect debt," would "be the longer period provided by Virginia or the jurisdiction where you live." But neither party contended that the provision amounted to "an effective choice" of law for the account-stated claim.

will apply the law of Oregon as the forum state." *Id.* (citing *Erwin v. Thomas*, 264 Or 454, 459-60, 506 P2d 494 (1973), for the proposition that "[n]either state has a vital interest in the outcome of this litigation and there can be no conceivable material conflict of policies or interests if an Oregon court does what comes naturally and applies Oregon law"). Thus, the court affirmed the denial of Sanders's motion for summary judgment but reversed the grant of summary judgment to Portfolio. Both parties sought review, each contending that the Court of Appeals erred in ruling that the party is not entitled to summary judgment.

## II.   ANALYSIS

We allowed both petitions and have consolidated the cases. According to Sanders, the Court of Appeals erred by failing to recognize that Virginia—and only Virginia—has a "relevant connection" for purposes of the choice-of-law inquiry and, thus, supplies the governing statute of limitations.[4] According to Portfolio, the Court of Appeals erred by failing to recognize that the March 2010 statement was a "final accounting" of Sanders's debt, to which he impliedly agreed as a matter of law. As indicated above, we do not agree with either party, and we affirm the decision of the Court of Appeals, although we disagree with its construction of ORS 15.360. We begin by addressing Sanders's argument that he was entitled to summary judgment on his affirmative defense that Portfolio's claim is barred by Virginia's statute of limitations.

A.   *Sanders's Motion for Summary Judgment on the Statute-of-Limitations Defense*

The parties' dispute over the applicable statute of limitations turns on a narrow legal question. There is no dispute that the only difference between applying Virginia law or Oregon law to resolve the case is that the claim would be time-barred under Virginia's law but would not be time-barred under Oregon law. There also is no dispute that

---

[4] Although Sanders appears to have been a Washington resident when Capital One mailed him the March 2010 statement on which the account-stated claim is based, neither party argues that the State of Washington has a relevant connection to the account-stated claim.

Oregon law supplies the analytical framework for choosing between the conflicting statutes of limitations. The question on which the parties disagree is what that framework directs us to do with a conflict of the type presented in this case.

As described above, the Court of Appeals began its analysis with ORS 15.360, concluded that neither Virginia nor Oregon had "a relevant connection with the transaction or the parties," within the meaning of that statute, and then turned to our decision in *Erwin* to conclude that Oregon's statute of limitations applies to the claim. 292 Or App at 470-72. In their briefing of the issue to this court, however, both parties begin their analysis with a different statute, ORS 12.430, which directs Oregon courts to choose between competing statutes of limitations by determining the state or states on whose law the claim is "substantively based."

### 1.  *ORS 12.430*

As an initial matter, we agree with the parties that ORS 12.430 is the correct starting point when the parties' dispute requires the court to choose between conflicting statutes of limitations. ORS 12.430 provides:

"(1)   *** if a claim is substantively based:

"(a)   Upon the law of one other state, the limitation period of that state applies; or

"(b)   Upon the law of more than one state, the limitation period of one of those states, chosen by the law of conflict of laws of this state, applies.

"(2)   The limitation period of this state applies to all other claims."[5]

We begin with two preliminary observations about the text: First, the statute distinguishes between the law on which

---

[5] An exception to the general rules that ORS 12.430 provides for choosing the statute of limitations based on the laws on which the claim is substantively based is set out in ORS 12.450, which provides that, "if the applicable limitation period of another state is 'substantially different from the limitation period of this state and has not afforded a fair opportunity to sue upon, or imposes an unfair burden in defending against the claim,' then Oregon's statute of limitations applies." *Miller v. Ford Motor Co.*, 363 Or 105, 118, 419 P3d 392 (2018) (quoting ORS 12.450). No party contends that ORS 12.450 governs this case.

a claim is "substantively based" and the law that specifies a "limitation period" for the claim and, second, the statute sets up essentially a default in favor of Oregon's statute of limitations, unless the claim is substantively based on the law of another state. ORS 12.430(2).

Sanders contends that Portfolio's account-stated claim is "substantively based" only on the law of Virginia and thus is governed by Virginia's limitation period, under ORS 12.430(1)(a). Portfolio contends that its claim is not "substantively based" on the law of any other state and thus is governed by Oregon's limitation period, under ORS 12.430(2). As with all issues of statutory construction, we seek to discern what the legislature intended by applying the methodology described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Under that statutory construction methodology, we give primary consideration to the text and context of the pertinent statutes and consider the legislative history "'for what it's worth.'" *Id.* at 171.

Here, the text of ORS 12.430 does not specify how a court is to determine whether a claim is "substantively based" on the law of a state other than Oregon, but the legislative history points to the answer. The text is taken verbatim from section 2 of the Uniform Conflict of Laws—Limitations Act (UCLLA), which the legislature adopted in 1987, at the request of the Oregon State Bar. Or Laws 1987, ch 536; Minutes, House Committee on Judiciary, June 8, 1987 (testimony of Diana Godwin, Oregon State Bar).

As the Commentary to the UCLLA explains, the section that became ORS 12.430 "provides that the enacting state, as forum, will apply its own conflicts law, whatever it may be, to select the substantive law that governs the litigated claim."[6] Exhibit F, Senate Committee on Judiciary, SB 297, Apr 1, 1987 (commentary to the UCLLA accompanying report by Joe Willis). That commentary was before the House and Senate Committees on Judiciary as an exhibit

---

[6] The Commentary also explains that a claim would be substantively based "[u]pon the law of more than one state," as addressed in ORS 12.430(1)(b), "[i]f different issues involved in a single claim are found to be governed by the substantive laws of different states." Exhibit F, Senate Committee on Judiciary, SB 297, Apr 1, 1987 (commentary to the UCLLA accompanying report by Joe Willis).

when they recommended passage of the UCLLA bill without amendment or opposition. Minutes, House Committee on Judiciary, June 8, 1987, June 10, 1987. We are, thus, persuaded that the intention of the 1987 Oregon legislature was consistent with the intention of the drafters of the uniform law—that courts would use Oregon's conflicts law "to select the substantive law that governs the litigated claim." *See, e.g.*, *Elk Creek Management Co. v. Gilbert*, 353 Or 565, 579-80, 303 P3d 929 (2013) (concluding that Oregon legislature's intention when adopting "nearly verbatim" a section of the Uniform Residential Landlord and Tenant Act "was consistent with the intent of the drafters of the" uniform law, as reflected in the commentary).

2.  *Whether the claim is substantively based on the law of another state*

Although the parties agree with our conclusion that we should apply Oregon conflicts law to determine whether Portfolio's account-stated claim is "substantively based" on the law of Virginia or Oregon, they disagree on where that law leads us. According to Sanders, the Court of Appeals correctly determined that ORS 15.360 supplies the applicable framework for determining whether the account-stated claim is substantively based on the law of Virginia. Under ORS 15.360, "the rights and duties of the parties with regard to an issue in a contract are governed by the law, in light of the multistate elements of the contract, that is the most appropriate for a resolution of that issue," and the "most appropriate law" is determined by following three steps: "(1) Identifying the states that have a relevant connection with the transaction or the parties"; "(2) Identifying the policies underlying any apparently conflicting laws of these states that are relevant to the issue"; and "(3) Evaluating the relative strength and pertinence of these policies[.]" ORS 15.360. As explained above, however, Sanders argues that the Court of Appeals erred in failing to recognize that Virginia has a "relevant connection" within the meaning of ORS 15.360.

According to Portfolio, however, ORS 15.360 supplies no mechanism for choosing Virginia law as the "most appropriate" to resolve the substance of the account-stated

claim because ORS 15.360 describes how to choose between "apparently conflicting laws." Portfolio emphasizes that Sanders, in opposing the account-stated claim, asserts that "Virginia law is the same" as Oregon's with respect to the "essential allegations of an account stated claim." That assertion, Portfolio argues, amounts to a concession that there are no "apparently conflicting laws" with respect to the substance of the account-stated claim and, thus, no basis under ORS 15.360 on which to compare underlying policies. Portfolio urges us, instead, to apply common-law choice-of-law principles. It agrees with the Court of Appeals that *Erwin* controls and requires that "the law of the forum should apply" under the circumstances of this case. *See* 264 Or at 457-58.

We agree with Portfolio that ORS 15.360 does not supply a mechanism for Oregon courts to choose the law of another state when there is no apparent conflict with the applicable Oregon law. Under those circumstances, and if no other statute provides a path to choose the state on whose law the claim is substantively based, we conclude that the common-law principle described in *Erwin* fills the gap.

a.  The common-law method for resolving conflicts of law

Before turning to Sanders's arguments regarding ORS 15.360, we explain the historical context out of which the choice-of-law statutes arose. At the time that the legislature adopted ORS 12.430, Oregon conflicts law was entirely a matter of common law. Oregon by then had adopted a method for resolving conflicts that looked to the "'most significant relationship' approach of Restatement (Second) Conflict of Laws." *Erwin*, 264 Or at 456 (footnote omitted); *see Lilienthal v. Kaufman*, 239 Or 1, 16, 395 P2d 543 (1964) (adopting for conflicts issues in contract cases an analysis that took into account the competing state "connections with the transaction" and state interest that would "be served or thwarted, depending upon which law is applied"); *Casey v. Manson Constr. Co.*, 247 Or 274, 287-88, 428 P2d 898 (1967) (for conflicts issues in tort cases, adopting "the rule of 'most significant relationship with the occurrence and with the parties' as set forth in the Tentative Draft of the Restatement [(Second)

*Conflict of Laws*]"). That approach replaced "the traditional, arbitrary, and much criticized rule[s]" of *lex loci*, under which the place where certain legally significant events occurred—such as the formation of a contract or the last act necessary to give rise to a tort claim—would mechanistically determine the governing law. *See Erwin*, 264 Or at 456.

Unfortunately, the "modern" approach to resolving conflicts was also widely criticized. *Id.* (explaining that this court in the late 1960s had adopted the "maligned and almost universally criticized 'most significant relationship' approach of Restatement (Second) Conflict of Laws" (footnote omitted)). As the Oregon Law Commission explained to the 2001 Legislative Assembly, Oregon's resolution of conflicts disputes had produced "a confusing, rather erratic line of decisions," which prompted the commission to recommend that the legislature adopt a statutory framework for resolving conflicts issues in contract cases. Exhibit A, Senate Committee on Judiciary, HB 2414, Apr 24, 2001 ("Conflicts Law Applicable to Contracts Report" adopted by Oregon Law Commission). The commission maintained in its report to the legislature that the proposed legislation was "a substantial improvement over the case law of which it [took] account but which it would largely replace." *Id*. The proposed law was adopted with only minor changes to the commission's draft and is now codified at ORS chapter 15.300 to 15.380. *See* Exhibit C, House Committee on Judiciary, HB 2414, Mar 28, 2001 ("Proposed Amendments to House Bill 2414"); Or Laws 2001, ch 164 (adopting *former* ORS chapter 81 (2001), *renumbered as* ORS chapter 15 (2011)).[7]

      b.   The statutory path to resolving conflicts of law, ORS 15.360

Neither party challenges the Court of Appeals' conclusion that Portfolio's account stated is a form of "contract," within the meaning of ORS chapter 15. 292 Or App at 469. And we agree that is a reasonable conclusion. As we will explain later in the opinion, this court has long described an "account stated" as an enforceable agreement that is based

---

[7] The legislature enacted a similar set of statutes for choosing the most appropriate law in tort cases. *See* ORS 15.400-15.460; Or Laws 2009, ch 451.

on consideration. *See, e.g.*, *Truman, Hooker, & Co. v. Owens*, 17 Or 523, 527, 21 P 665 (1889) (an account stated "is said to be in the nature of a new promise but the consideration of the promise is the stating of the account"); *Bliss v. Southern Pacific Co.*, 212 Or 634, 646, 321 P2d 324 (1958) (explaining that there is an enforceable contract when competent persons "upon a sufficient consideration, voluntarily agree to do or not to do a particular thing which may be lawfully done or omitted"); *see also Edwards, Guardian, v. Hoevet*, 185 Or 284, 295, 200 P2d 955 (1949) (explaining that the "theory of stated accounts introduced into the law of contracts a sort of stratification concept in which a debtor-creditor relationship is a sedimentary deposit underlying and supporting the superstructure consisting of the subsequently formed account stated").

We also agree that, among the statutes governing choice of law issues for contracts claims, the Court of Appeals reasonably focused on ORS 15.360. That statute is essentially a "catch-all" provision that applies "[t]o the extent that an effective choice of law has not been made by the parties pursuant to ORS 15.350 or 15.355, or is not prescribed by ORS 15.320, 15.325, 15.330, 15.335 or 15.380" (provisions that make Oregon law always or presumptively the choice for certain categories of contract). Here, neither party contends that there has been an "effective choice" of the law to govern the account-stated claim, and it does not fall among the categories of contracts for which ORS chapter 15 prescribes the governing law. Thus, if the account-stated claim in this case is governed by statute at all, then it is governed by ORS 15.360.

However, we do not agree with Sanders that ORS 15.360 leads to a conclusion that Virginia's account-stated law is the "most appropriate for a resolution of" the substance of Portfolio's claim. Under ORS 15.360, "[t]he most appropriate law is determined by:

"(1)   Identifying the states that have a relevant connection with the transaction or the parties, such as the place of negotiation, making, performance or subject matter of the contract, or the domicile, habitual residence or pertinent place of business of a party;

"(2)   Identifying the policies underlying any apparently conflicting laws of these states that are relevant to the issue; and

"(3)   Evaluating the relative strength and pertinence of these policies in:

"(a)   Meeting the needs and giving effect to the policies of the interstate and international systems; and

"(b)   Facilitating the planning of transactions, protecting a party from undue imposition by another party, giving effect to justified expectations of the parties concerning which state's law applies to the issue and minimizing adverse effects on strong legal policies of other states."

ORS 15.360.

### (1)   States with a relevant connection

Sanders contends that, at step one of the statutory framework, the only "relevant connection" is a state's connection with the transaction or the contracting parties *at the time of the transaction*. According to Sanders, only Virginia has a relevant connection under that standard—because Capital One is chartered in Virginia and because its credit agreements (the source of the underlying debt in the account-stated claim) are regulated by Virginia law unless otherwise specified. *See* Va Code Ann § 6.2-312 (loans exempt from limit on contract rate of interest); Va Code Ann § 6.2-313 (specifying when banks can charge interest and what rate).

Before considering Sanders's argument, we pause to emphasize that, when the Court of Appeals concluded that neither Oregon nor Virginia has a "relevant connection with the transaction or the parties," it mistakenly focused on its conclusion that neither state has a connection of the "type that evidences a *state* interest in having its law applied." *Portfolio Recovery*, 292 Or App at 471 (emphasis in original). The court explained that "Virginia would have no substantial interest in having its statute prevent Portfolio's action because defendant was not a resident of Virginia." *Id*. We caution that the court's focus on "a state interest" to determine which states have a "relevant connection" is not rooted in the text of ORS 15.360. Rather, the "state interest" test

cited by the Court of Appeals is taken from decisions of that court that predate adoption of Oregon's statutory framework for resolving conflicts of law. *See, e.g.*, 292 Or App at 471 (quoting *Manz v. Continental American Life Ins. Co.*, 117 Or App 78, 83, 843 P2d 480 (1992), *adh'd to as modified on recons*, 119 Or App 31, 849 P2d 549, *rev den*, 317 Or 162 (1993)); Or Laws 2001, ch 164 (adopting *former* ORS chapter 81 (2001), *renumbered as* ORS chapter 15 (2011)). We are mindful of the advice to the legislature that the statutory framework "largely replace[d]" the existing choice-of-law case law and, thus, we caution against any resort to that case law to resolve issues that the statutory framework addresses. Exhibit A, Senate Committee on Judiciary, HB 2414, Apr 24, 2001 ("Conflicts Law Applicable to Contracts Report").[8]

Turning to the statutory standard, Sanders's argument that Virginia has a relevant connection is plausible. At a minimum, Sanders's cardholder agreement with Capital One is the source of the debt that gave rise to the alleged "account stated," and the terms of that agreement may affect whether the March 2010 balance can be the basis for an account-stated claim. *See Halvorson v. Blue Mt. Prune Growers Co-op.*, 188 Or 661, 670, 214 P2d 986 (1950) (explaining that, if the relationship of the parties is governed by the terms of an express contract, then a final accounting "at variance with the terms of the contract" cannot be the basis for an account-stated claim).

But we reject Sanders's argument that only Virginia has a "relevant connection." As Sanders recognizes, ORS 15.360(1) directs us to identify states with a "relevant connection with the transaction *or the parties*, such as the * * * domicile, habitual residence or pertinent place of business of a party." (Emphasis added.) Sanders does not dispute that his connection to Oregon was sufficient, by the time that

---

[8] The commentary from the Oregon Law Commission also explained to the legislature that the bill deliberately replaces consideration of "governmental interests" with consideration of policies because "[m]ost laws governing private transactions and disputes concern the interests of private parties, and may be adopted at their behest, rather than interests of a state or government." Exhibit A, Senate Committee on Judiciary, HB 2414, Apr 24, 2001 ("Comments in Support of Testimony from the Oregon Law Commission").

Portfolio filed the action, to give Oregon personal jurisdiction over him.[9] He contends, however, that a state's "relevant connection with" the parties under ORS 15.360(1) must be determined *at the time of the transaction*. We disagree.

Under the statutory construction methodology that we explained above, we give primary consideration to the text and context of the pertinent statutes because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *Gaines*, 346 Or at 171 (internal quotation marks and citation omitted). That inquiry persuades us that a "relevant connection" under ORS 15.360(1) is not limited to connections at the time of the transaction on which the claim is based, for two reasons.

First, the text of ORS 15.360(1) sets out a non-exclusive list of "relevant connections," and that list does not express the distinction for which Sanders advocates between a party's domicile at the time of events giving rise to a claim and a party's domicile at the time that the claim is filed. Second, the statutory context demonstrates that Oregon's connection with Sanders when the action was filed is a "relevant connection" in this case. Oregon's connection to Sanders as his state of domicile by the time the action was filed furnishes one basis for Oregon to exercise personal jurisdiction over Sanders and, as a result, authority to exercise jurisdiction over the action and to enter a judgment that will provide a final resolution of the parties' dispute. *See* ORS 14.030 ("When the court has jurisdiction of the parties, it may exercise it in respect to any cause of action or suit wherever arising," except for certain actions involving real property.); ORCP 4 A (Oregon has jurisdiction over a person who is "a natural person domiciled in this state" "when the action is commenced."). Indeed, the entire

---

[9] The parties describe Sanders as a "resident" of Oregon. Although we have emphasized in the context of personal jurisdiction that the concept of "domicile" requires residence plus "an intention to remain there permanently or indefinitely," *Elwert v. Elwert*, 196 Or 256, 265, 248 P2d 847 (1952) (internal quotation marks and citation omitted), we do not understand Sanders to dispute that Oregon was also his "domicile." But he also was personally served while present in the state of Oregon, which is independently a sufficient basis for personal jurisdiction under ORCP 4 A(1) (a court has jurisdiction over a "natural person present within this state when served").

statutory framework for resolving conflicts of law presumes that, if Oregon's connection with a party makes it the forum jurisdiction, then that connection justifies applying Oregon law at least to resolve the conflict. For example, it is the fact that the action has been filed in an Oregon court that allows ORS 12.430 to govern our determination of the statute of limitations that applies to the claim.

While a connection with a party sufficient to give rise to jurisdiction may not be "relevant" in every case, and it ultimately may not outweigh considerations that support applying the law of another state, we are persuaded that the legislature did not intend to limit our consideration of a state's "relevant connection with" a party only to connections that existed at the time of the transaction. In this case, in which the issues in dispute turn on whether Portfolio can pursue its claim for account stated in an Oregon court, we conclude that Oregon's connection as Sanders's domicile—by giving rise to one statutory basis for Oregon's exercise of jurisdiction over the claim—is a "relevant connection" that requires us to move on to the second step in the inquiry under ORS 15.360. Thus, we answer the inquiry at the first step of ORS 15.360 by concluding that both Oregon and Virginia have a "relevant connection with the transaction or the parties."

(2) "Policies underlying any apparently conflicting laws"

At the second and third steps of the analytical framework, ORS 15.360 directs that, after identifying the states with a relevant connection to the transaction or parties, the court will identify "the policies underlying any apparently conflicting laws of these states that are relevant to the issue" and then evaluate "the relative strength and pertinence of these policies[.]" As set out above, Portfolio contends that these steps in the analysis provide no mechanism for choosing Virginia law. It reasons that there are no "apparently conflicting laws" with respect to the substance of the account-stated claim and, thus, no pertinent "underlying policies" that could point to a choice of Virginia law, given Sanders's assertion that the laws of Oregon and

Virginia are "the same" with respect to the "essential allegations of an account stated claim."

Portfolio's argument is persuasive. As an initial matter, we agree that Portfolio appropriately focuses only on the laws governing the merits of the account-stated claim. The "issue" for which we have turned to ORS chapter 15 is our charge under ORS 12.430 to determine whether Portfolio's account-stated claim is "substantively based" on the law of Virginia. And we have explained that ORS 12.430 distinguishes the law on which a claim is "substantively based" from the law governing the "limitation period" of the claim.

We also agree with Portfolio that, if the law of Virginia is "the same" as Oregon's with respect to the merits of the account-stated claim, then those laws are not "apparently conflicting" within the meaning of ORS 15.360. Although the legislature did not define the phrase "apparently conflicting," and although it is not a phrase that had appeared in this court's conflicts-of-law decisions, it is a phrase that the Court of Appeals had used "when it appears that [the other state's] law may be different from the Oregon law or when there appears to be no applicable Oregon law." *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 316, 696 P2d 1096, *rev den*, 299 Or 314 (1985); *see also Angelini v. Delaney*, 156 Or App 293, 300, 966 P2d 223 (1998), *rev den*, 328 Or 594 (1999) (explaining that "Oregon courts *first* look to whether there is a material difference between Oregon substantive law and the law of the other forum" (emphasis in original)).

That concept of "apparently conflicting"—if not the actual phrasing—is also captured by this court's decision in *Erwin*, which both *Deerfield* and *Angelini* cited for the proposition that Oregon law applies if there is no "apparent conflict," or "material difference" between the laws of Oregon and the other state. *Deerfield*, 72 Or App at 316 (citing *Erwin* for the proposition that, if "there is no apparent conflict between the relevant principles of Pennsylvania and Oregon law, we are free to apply the latter"); *Angelini*, 156 Or App at 300 (citing *Erwin* for the proposition that, "[i]f there is no material difference ***[,] Oregon law applies"). As set out above, *Erwin* emphasized that, "before engaging

in the mysteries of the solution of an actual conflict, we must make certain that we have a conflict of consequence which requires a choice." 264 Or at 457; *see also Black's Law Dictionary* 374-75 (11th ed 2019) (defining a "conflict of laws" as "[a] difference between the laws of different states or countries").

Thus, we agree with Portfolio's premise that, if the party moving for summary judgment identifies no difference between the substantive contract law of another state and the substantive contract law of Oregon, then ORS 15.360 provides no mechanism for the court to determine on summary judgment that the claim is substantively based on the law of another state.[10]

The solution, according to Portfolio, is to turn to the common-law conflicts decisions that predate the statutory framework. Although we are reluctant to chart that path away from statutes that appear to have been intended as a comprehensive framework for resolving conflicts disputes, we agree that Portfolio's proposal is the most consistent with the legislature's intention under the circumstances of this case.

We begin by emphasizing why courts should hesitate to resort to conflicts decisions that predate the statutory framework for resolving conflicts. First, the text of ORS 15.305 suggests that the legislature intended the provisions of ORS 15.300 to 15.380 to comprehensively resolve "all" conflicts regarding contract claims. Second, the legislative history is also clear that the new statutory framework was drafted to "largely replace" the case law for resolving choice-of-law issues in contract claims. Exhibit A, Senate Committee on Judiciary, HB 2414, Apr 24, 2001 ("Conflicts Law Applicable to Contracts Report").

However, the parties in this case have identified a choice-of-law scenario that the statutes do not resolve—a need to choose the state on whose law a contract claim is

---

[10] We express no opinion regarding whether Virginia's law of account stated differs from Oregon's in some manner of consequence to the account-stated claim. Rather, Sanders has identified none, and we decline to undertake a search for a conflict *sua sponte* under the circumstances of this case.

based even though the applicable contract laws are not "apparently conflicting." If that contract is not one for which the legislature has prescribed the governing law or one for which the parties have made an effective choice of law, then ORS chapter 15 provides no path. The legislature may have assumed that there would be no need for courts to engage in conflicts analysis when the parties identify no difference of consequence in the laws governing the merits of the contract claim. But, as this case highlights, where the parties identify a difference of consequence in the states' respective *statutes of limitations*, ORS 12.430 requires some mechanism for choosing whether a claim is "substantively based" on the law of another state, even if those substantive laws do not "apparently conflict[]." We are persuaded that our common-law conflicts principles fill that gap.

At the time that the legislature adopted ORS 12.430, common-law principles determined whether a claim was substantively based on the law of another state. Those principles specified that the law of Oregon "should apply" to a claim filed in Oregon court if there was no "conflict of consequence" between the applicable laws of Oregon and another state. *Erwin*, 264 Or at 457-58; *Deerfield*, 72 Or App at 316; *Angelini*, 156 Or App at 300. Although we have explained that the statutory framework for resolving this conflict "largely replace[d]" the framework outlined by the prior case law, nothing in the text of ORS 15.300 to 15.380 suggests that the legislature intended to abrogate that default-to-Oregon principle when the laws on which the claim is based do not "apparently conflict." Indeed, as we have explained, those statutes seem to have retained the principle that, when the laws are not "apparently conflicting," there is no path to choosing the law of another state unless the parties have made an "effective choice" of law to govern the contract claim. We, thus, conclude that the common-law path to resolving such cases is one that the legislature did not replace.

As indicated above, the answer under that common-law path is that Oregon law "should apply" to a claim filed in Oregon court if there is no "conflict of consequence." *Erwin*, 264 Or at 457-58. *Erwin* described two different scholarly

approaches to the question of whether there is a conflict of consequence that "requires a choice." One approach would declare that there is no conflict requiring a choice if "the laws of two states are the same or would produce the same results" but would otherwise compare "the interests of the two states as a means" of deciding the conflict. *Id.* at 458. Proponents of the other approach—perhaps proposing a difference only of semantics—would decline to declare a "conflict" unless, after considering the "the policy or governmental interest behind the law of each state," they found a "substantial conflict" between the "policies or interests in the particular factual context in which the question arises." *Id.* at 457. Without taking sides in the debate, this court agreed with the premise underlying both approaches: a conclusion that there is no conflict is a conclusion that Oregon law "should apply." *Id.* at 458.

The same answer is compelled by the record in this case. We have already explained that Sanders points to no difference between the account-stated law of Virginia and the account-stated law of Oregon that could create a conflict of consequence to the substance of Portfolio's claim. Under those circumstances, as we concluded in *Erwin*, an Oregon court should do "what comes naturally and appl[y] Oregon law" to resolve the substance of the account-stated claim. 264 Or at 459-60. That conclusion resolves the statute of limitations dispute as well; because the claim is not substantively based on the law of Virginia, "[t]he limitation period of this state applies to" the claim. ORS 12.430(2).

B.    *Portfolio's Motion for Summary Judgment on the "Account-Stated" Claim*

We also allowed review to consider whether the Court of Appeals correctly determined that genuine issues of material fact preclude Portfolio from prevailing on its motion for summary judgment. As we have emphasized, the party moving for summary judgment has the burden of demonstrating "that there is no genuine issue as to any material fact" and that the party "is entitled to prevail as a matter of law." ORCP 47 C; *Amalgamated Transit Union*, 362 Or at 491. In reviewing whether Portfolio demonstrated that "[n]o genuine issue as to a material fact exists," we

"view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the nonmoving party," and we must be able to conclude that "no objectively reasonable juror could return a verdict for" Sanders on the account-stated claim. *Id.* Viewed in light of that standard, we agree with the Court of Appeals that genuine issues of material fact preclude Portfolio from prevailing as a matter of law on the account-stated claim.

### 1. *The law of account stated*

We briefly introduced the doctrine of account stated at the outset of the opinion but now return to that claim in greater detail. As we have repeatedly explained, "'[a]n account stated is an agreement between persons who have had previous transactions of a monetary character fixing the amount due in respect to such transactions and promising payment.'" *Sunshine Dairy*, 234 Or at 85 (quoting *Steinmetz*, 106 Or at 634). Although the doctrine has its historical origins in accountings between merchants, this court long ago recognized that the doctrine has been "extended to embrace every kind of transaction in which the relation of debtor or creditor is involved." *Crawford v. Hutchinson*, 38 Or 578, 580-81, 65 P 84 (1901).

Regardless of the nature of the underlying transaction, the "crux of an account stated is an agreement * * * that a certain amount is owing and will be paid." *Sunshine Dairy*, 234 Or at 85. The agreement "is said to be in the nature of a new promise," and "the consideration of the promise is the stating of the account."[11] *Truman*, 17 Or at 527. We have emphasized that, "[t]o constitute an account stated, each party must understand the transaction as a final adjustment of the respective demands between them taken into consideration in the accounting." *O'Neill v. Eberhard Co.*, 99 Or 686, 695, 196 P 391 (1921). However, and of particular

---

[11] Portfolio argues that the Court of Appeals erred in applying Oregon law to evaluate the account-stated claim. That argument is perplexing given Portfolio's insistence elsewhere in briefing that there is no difference between the laws of Oregon and Virginia with respect to the merits of the account-stated claim. We accepted that premise as a necessary component to our earlier conclusion that the claim is "substantively based" on the law of Oregon and, thus, governed by Oregon's statute of limitations. As did the Court of Appeals, we look to Oregon cases to resolve the account-stated claim.

importance in this case, we have explained that "assent of a debtor to an account stated may be implied from his retention of the account, without objection, for more than a reasonable time." *Halvorson*, 188 Or at 669.

An account-stated claim, thus, differs from an action on the original account in two important ways. First, while an "account" alleges that the defendant has incurred a financial obligation but not necessarily that the defendant has agreed to the amount of the obligation, an "account stated" alleges agreement as to the amount of a financial obligation. *Cooley v. Roman*, 286 Or 807, 809 n 1, 596 P2d 565 (1979), *overruled on other grounds by Assoc. Unit Owners of Timbercrest Condo. v. Warren*, 352 Or 583, 288 P3d 958 (2012). Second, because an "account stated" is based on a new agreement to the "accounting," we have explained that "it is not ordinarily necessary to give evidence of the original character of the debt or of the items constituting the account, for it is sufficient if the plaintiff proves the account stated." *Del Monte Meat Co., Inc. v. Hurt*, 277 Or 615, 618, 561 P2d 627 (1977) (quoting *Steinmetz*, 106 Or at 637).

As those two distinctions suggest, a claim that the parties have agreed to a final accounting of existing obligations assumes that the terms of the existing agreement do not already specify the amount of the obligation. *See, e.g.*, *O'Neill*, 99 Or at 695 (explaining that, with an account stated, the parties are agreeing to a "final adjustment of the respective demands"). Cases in the "modern" era have specifically rejected recovery on an "account stated" when the amount alleged to be owed is different from the amount specified in an existing contract. *Remington v. Wren*, 278 Or 471, 474, 564 P2d 1025 (1977); *Halvorson*, 188 Or at 670.

In *Remington*, the plaintiff built a house for the defendants and then sent a final bill for an amount higher than the express contract price. 278 Or at 473. Although the defendants initially responded that they would pay the billed amount, three months later they sent a check for the contract price, and the plaintiff brought an account-stated claim to recover the difference. *Id*. We agreed with the defendants that "the plaintiff cannot maintain an action based upon an account stated when there was an express contract to pay a

specific amount of money." *Id*. In reaching that conclusion, we quoted *Corbin on Contracts* for the proposition that, for an "account stated," " '[t]he new promise must be coextensive with the existing debt or other duty, or must be to render a performance that is wholly and exactly included within that debt or duty.' " *Id*. at 474 (quoting Arthur L. Corbin, 1A *Corbin on Contracts* § 212, 282 (1963)); *see also Halvorson*, 188 Or at 670 (explaining that, if the relationship of the parties is governed by the terms of an express contract, then a final accounting "at variance with the terms of the contract" cannot be the basis for an account-stated claim).

2. *Application to this case*

From our review of the case law described above, we identify three requirements for an account-stated claim that are disputed in this case: (1) that Capital One intended to agree that the "new balance" in the March 2010 credit card statement was a final accounting of Sanders's credit card obligations; (2) that Sanders's delay in objecting to the amount stated as the "new balance" implies that he agreed that the March 2010 statement described the final balance owing on his obligation to Capital One;[12] and (3) that the balance stated in the March 2010 credit card statement did not vary from Sanders's obligations under the express terms of the credit card agreement. To prevail on summary judgment, Portfolio was required to demonstrate that there "is no genuine issue" as to any of those material facts. ORCP 47 C; *Amalgamated Transit Union*, 362 Or at 491. Sanders has identified reasons to doubt that Portfolio met that burden

---

[12] Portfolio contends that Sanders's assent is established as a matter of law, simply by his delay in objecting to the March 2010 balance, citing early cases like *Vanbebber v. Plunkett*, 26 Or 562, 566, 38 P 707 (1895), in which this court described the question of whether a debtor objected within a "reasonable time" as "a question of law for the court" when the "facts are undisputed." However, more recent decisions have emphasized that a debtor's failure to object to the statement within a reasonable time is only "evidence" and that "[w]hether silence under the particular circumstances amounts to an admission of correctness and whether the delay was unreasonable are questions of fact for the jury." *Standard Prod. Co. v. ICN United Med. Labs.*, 279 Or 633, 635, 569 P2d 594 (1977) (internal quotation marks and citation omitted); *see also Halvorson*, 188 Or at 670 ("[w]hat is a reasonable time depends upon the circumstances of the case, including the nature of the transaction, the relationship of the parties, and the usual course of their business"). On this record, we decline to decide whether the early cases are reconcilable with, or implicitly overruled by, the later cases.

with respect to any of the three requirements for its account-stated claim, but we limit our discussion to the first.

The first disputed issue of fact is whether Capital One intended, when sending the statement that is allegedly the basis for an account stated, to agree that the "new balance" in the March 2010 credit card statement was a final accounting of Sanders's credit card obligations. We explained in *O'Neill* that "[t]he binding force of an account stated will not be given to the mere furnishing of an account which was not with a view to establishing a balance due, or finally adjusting the matters of account between the parties[.]" 99 Or at 695. Portfolio acknowledges that an account stated must be based on a "final account" of the parties' past transactions giving rise to the debt, but it asserts that, in the context of an ongoing relationship, it is enough for Capital One to have intended that the March 2010 statement would be a "a final accounting of all *prior* transactions between the parties" and that there is no dispute as to that fact.

Portfolio does not identify any case in which this court has recognized an account-stated claim based on what would essentially be an "interim final" accounting—an agreement between parties engaged in ongoing transactions to settle the balance for past transactions—and that would not be a standard usage of the term "final." *See Webster's Third New Int'l Dictionary* 851 (unabridged ed 2002) (defining "final" as "boundary, limit, end"). In any event, Portfolio's argument for that "interim final" accounting rule is beyond the scope of this case, because Portfolio does not contend that Sanders used the credit card for any transactions after the March 2010 statement. Indeed the monthly credit card statements that Portfolio submitted in support of its motion for summary judgment show that, as of November 2009, Capital One had made Sanders's account "unusable." Thus, the only question presented by the facts of this case is whether Capital One intended to propose the "new balance" in the March 2010 credit card statement as the final accounting of Sanders's credit card obligations.

Regardless of whether a reasonable factfinder might infer that Capital One intended that balance statement to represent the final amount of Sanders's obligations, that is

not the only reasonable inference when the record is viewed in the light most favorable to Sanders. The Court of Appeals correctly pointed to evidence that Capital One continued to send credit card statements after March 2010 in which it asserted that the amount of Sanders's obligation on the past transactions was increasing due to claimed interest charges on the existing balance. A reasonable factfinder could view such statements as evidence that Capital One did not intend to agree that the March 2010 balance was the final balance that Sanders owed for his past credit card transactions.

Moreover, the evidence that Sanders's monthly statements showed a lower "new balance" in months preceding March 2010, even after the account became "unusable" also could permit a reasonable factfinder to doubt that Capital One intended the March 2010 statement of "balance"—as opposed to one of the earlier statements of "new balance"—to represent the final amount due on the past transactions. Indeed, the March 2010 notice itself would permit a reasonable factfinder to infer that Capital One did not intend the notice to be a final accounting. It specified that the "Payment Due" was not a "Payoff Amount" and that Sanders needed to call a number on the statement "for an exact payoff amount." The notice also advised that "[y]ou are responsible for paying the full balance on your account as well as any associated collections expenses, attorney fees and court costs *unless the law does not allow us to collect these amounts*, as provided in your customer agreement." (Emphasis added.) Viewing the March 2010 statement in the light most favorable to Sanders, the nonmoving party, a reasonable factfinder could conclude that Capital One did not intend to agree that the "new balance" represented the final accounting of Sanders's credit card debt. Portfolio's failure to demonstrate that there is an absence of a "genuine issue" as to that first material fact requires reversal of the trial court's grant of summary judgment to Portfolio.

### III.   CONCLUSION

We conclude that Oregon's statute of limitations applies to Portfolio's account-stated claim. Thus, the Court of Appeals correctly held that the claim is not time barred and that Sanders is not entitled to summary judgment on

his affirmative defense. We also conclude that the Court of Appeals correctly held that genuine issues of material fact preclude Portfolio from demonstrating that it is entitled to summary judgment on the merits of its account-stated claim. *See* ORCP 47 C.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.